GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000
Kevin S. Rosen (admitted *pro hac vice*)
Matthew S. Kahn (MK-5426)

*Attorneys for Defendant DLA Piper LLP (US)*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ICP STRATEGIC CREDIT INCOME FUND LTD., *et al.*,<br><br>         Debtors in Foreign Proceedings. | Chapter 15 Case<br><br>Case No. 13-12116 (REG)<br><br>(Jointly Administered) |
| ICP STRATEGIC CREDIT INCOME MASTER FUND LTD., ICP STRATEGIC CREDIT INCOME FUND LTD., and HUGH DICKSON and STEPHEN AKERS, solely in their capacity as the Foreign Representatives and Joint Official Liquidators of ICP Strategic Credit Income Fund Ltd. and ICP Strategic Credit Income Master Fund Ltd.,<br><br>         Plaintiffs,<br>   -against-<br><br>DLA PIPER LLP (US),<br><br>         Defendant. | Adv. Pro. No. 14-01835 (REG)<br><br>(Procedurally Consolidated Under This Matter) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>DEFENDANT DLA PIPER LLP (US)'S MOTION TO DISMISS THE COMPLAINT</u>**

New York, New York
March 27, 2014

# TABLE OF CONTENTS

Page

OVERVIEW .................................................................................................. 1

BRIEF RESPONSE TO PLAINTIFFS' MISLEADING LEGAL STANDARD
DISCUSSION ............................................................................................... 2

ARGUMENT ................................................................................................. 2

I.  PLAINTIFFS' OPPOSITION CONFIRMS THAT ALL OF
    PLAINTIFFS' CLAIMS ARE BARRED BY THE *IN PARI DELICTO*
    DOCTRINE AND THE *WAGONER* RULE ...................................... 2

    A.  Plaintiffs' Argument That A Choice Of Law Analysis Is Required
        And Mandates Application Of Cayman Law Is Wrong................... 2

    B.  Plaintiffs Effectively Concede Imputation And Confirm Their
        Inability To Plead Any *Facts* Supporting The Limited Exceptions
        To Imputation................................................................................ 5

        1.  The Adverse Interest Exception Does Not Apply Because
            Plaintiffs Fail To Plead "Total Abandonment" And Admit
            The Funds Benefitted From The Alleged Misconduct ......... 5

        2.  Plaintiffs Have Pled That ICP And Priore Were "Sole
            Actors," Which Completely Negates The Adverse Interest
            Exception ........................................................................... 8

        3.  Plaintiffs' Reliance On Conclusory Allegations Cannot
            Cure Their Failure To Plead Any *Facts* Establishing The
            Existence Of Innocent Insiders .......................................... 9

II. PLAINTIFFS' FAILURE TO IDENTIFY WELL-PLED FACTUAL
    ALLEGATIONS CONFIRMS THAT THEY DO NOT STATE AIDING
    AND ABETTING CLAIMS................................................................ 10

    A.  Plaintiffs Cannot Overcome The Complaint's Failure To Plead
        Any *Facts* Supporting The Elements Of An Underlying Fraud ... 10

    B.  There Can Be No Breach Of Fiduciary Duty Where The Complaint
        Fails To Plead Any *Facts* Establishing That The Margin Payments
        Were Inherently Improper............................................................. 11

    C.  Alternatively, Plaintiffs' *Factual* Allegations Admit That DLA Did
        Not Have The Requisite Actual Knowledge Of ICP's And Priore's
        Alleged Misconduct ..................................................................... 12

    D.  DLA's Routine Transactional Counsel Work Cannot Have
        Substantially Assisted The Alleged Misconduct As A Matter Of
        Law ............................................................................................... 16

Page

E.    Plaintiffs Effectively Concede That They Do Not Plead Proximate Causation ................................................................................ 18

III.    PLAINTIFFS' CAYMAN LAW CLAIM REMAINS INCURABLY DEFICIENT ............................................................................................. 19

A.    Plaintiffs Cannot Pursue Their Cayman Law Claim In A United States Court ............................................................................... 19

B.    The Cayman Law Claim Fails As A Matter Of Law ..................................... 20

CONCLUSION ............................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n,*
731 F.2d 112 (2d Cir. 1984) .................................................................... 11

*Adelphia Communications Corp. v. Bank of America, N.A. (In re Adelphia Communications Corp.),*
365 B.R. 24 (Bankr. S.D.N.Y. 2007) ................................................. 3, 4, 8

*Albion Alliance Mezzanine Fund, L.P. v. State Street Bank & Trust Co.,*
8 Misc.3d 264 (Sup. Ct. N.Y. Cty. 2003) .............................................. 16

*Amfesco Industries, Inc. v. Greenblatt,*
172 A.D.2d 261 (1st Dep't 1991) ........................................................... 12

*Anwar v. Fairfield Greenwich Ltd.,*
728 F. Supp. 2d 372 (S.D.N.Y 2010) .................................................... 14

*Armstrong v. McAlpin,*
699 F.2d 79 (2d Cir. 1983) .................................................................... 17

*Bank of India v. Morris,*
[2005] BCC 739 .................................................................................... 20

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .............................................................................. 15

*Bilta (UK) Ltd (in liquidation) v. Nazir,*
[2014] Chp 52 ....................................................................................... 20

*Breeden v. Kirkpatrick & Lockhart, LLP (In re Bennett Funding Grp., Inc.),*
268 B.R. 708 (S.D.N.Y. 2001) ................................................................ 8

*Broad-Bussel Family LP v. Bayou Grp. LLP (In re Bayou Hedge Funds Inv. Litig.),*
472 F. Supp. 2d 528 (S.D.N.Y. 2007) ................................................... 17

*Bullmore v. Ernst & Young Cayman Islands,*
861 N.Y.S.2d 578 (Sup. Ct. N.Y. Cty. 2008) .......................................... 7

*Cobalt Multifamily Investors I, LLC v. Shapiro,*
857 F. Supp. 2d 419 (S.D.N.Y. 2012) ..................................................... 3

*Concord Capital Mgmt., LLC v. Bank of America, N.A.,*
102 A.D.3d 406 (2013) ........................................................................... 7

*Concord Capital Mgmt., LLC v. Fifth Third Bank,*
2011 WL 10564345 (Sup. Ct. N.Y. Cty. Dec. 1, 2011) ........................... 6

*Cromer Fin. Ltd. v. Berger*,
  137 F. Supp. 2d 452 (S.D.N.Y. 2001),
  *reconsideration denied*, 2001 WL 506908 (S.D.N.Y. May 14, 2001),
  *lv to appeal denied*, 2001 WL 935475 (S.D.N.Y. Aug. 16, 2001) ...................................... 19

*CRT Investments, Ltd v. BDO Seidman, LLP*,
  85 A.D.3d 470 (1st Dep't 2011) .................................................................................... 16

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
  12 N.Y.3d 553 (2009) ...................................................................................................... 15

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
  17 F. Supp. 2d 275 (S.D.N.Y. 1998) ................................................................................ 5

*In re Agape Litig.*,
  773 F. Supp. 2d 298 (E.D.N.Y. 2011) ....................................................................... 18, 19

*In re Arbco Capital Mgmt., LLP*,
  498 B.R. 32 (Bankr. S.D.N.Y. 2013) ............................................................................... 10

*In re LightSquared Inc.*,
  504 B.R. 321 (Bankr. S.D.N.Y. 2013) ............................................................................ 17

*In re Magnesium Corp. of America*,
  399 B.R. 722 (Bankr. S.D.N.Y. 2009) ................................................................ 3, 4, 9, 11

*In re Optimal U.S. Litig.*,
  813 F. Supp. 2d 383 (S.D.N.Y. 2011) .............................................................................. 3

*In re Sharp Intern. Corp.*,
  281 B.R. 506 (Bankr. E.D.N.Y. 2002),
  *aff'd*, 302 B.R. 760 (E.D.N.Y. 2003),
  *aff'd*, 403 F.3d 43 (2d Cir. 2005).................................................................................... 18

*JP Morgan Chase Bank v. Winnick*,
  406 F. Supp. 2d 247 (S.D.N.Y. 2005) ............................................................................ 17

*Kaufman v. Cohen*,
  307 A.D.2d 113 (1st Dep't 2003) .............................................................................. 11, 17

*Kiobel v. Royal Dutch Petroleum Co.*,
  621 F.3d 111 (2d Cir. 2010) ............................................................................................. 2

*Kirschner v. Bennett*,
  648 F. Supp. 2d 525 (S.D.N.Y. 2009) ............................................................................ 13

*Kirschner v. Bennett (In re Refco Secs. Litig.)*,
  759 F. Supp. 2d 301 (S.D.N.Y. 2010) ............................................................................ 19

*Kirschner v. KPMG LLP*,
  15 N.Y.3d 446 (2010)............................................................................................... 4, 6, 8

*Kirschner v. KPMG LLP*,
  626 F.3d 673 (2d Cir. 2010) ............................................................................................. 7

*Krys v. Sugrue (In re Refco Secs. Litig.)*,
    779 F. Supp. 2d 372 (S.D.N.Y. 2011) .......................................................... 8, 13

*Landmark Ventures, Inc. v. Wave Sys. Corp.*,
    513 F. App'x 109 (2d Cir. 2013) .................................................................. 20

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
    108 F.3d 1531 (2d Cir. 1997), *cert. denied*, 552 U.S. 864 (1997) ................. 3

*Learning Annex, L.P. v. Blank Rome LLP*,
    106 A.D.3d 663 (2013), *lv to appeal denied*, 22 N.Y.3d 859 (2014)................ 17

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ....................................................................... 2

*Lippe v. Bairnco Corp.*,
    230 B.R. 906 (Bankr. S.D.N.Y. 1999) ......................................................... 12

*Mateo v. Senterfitt*,
    82 A.D.3d 515 (1st Dep't 2011)................................................................. 15

*McHale v. Citibank, N.A. (In re 1031 Tax Group, LLC)*,
    420 B.R. 178 (Bankr. S.D.N.Y. 2009) ......................................................... 9

*Meridian Horizon Fund, LP v. KPMG (Cayman)*,
    487 F. App'x 636 (2d Cir. 2012)................................................................ 17

*Mosionzhnik v. Chowaiki*,
    41 Misc.3d 822 (Sup. Ct. N.Y. Cty. 2013)................................................... 6

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
    267 F.3d 340 (3d Cir. 2001) ...................................................................... 9

*Oster v. Kirschner*,
    77 A.D.3d 51 (1st Dep't 2010).............................................................. 14, 17

*Patrick v. Allen*,
    355 F. Supp. 2d 704 (S.D.N.Y. 2005) ......................................................... 12

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
    446 F. Supp. 2d 163 (S.D.N.Y. 2006) ...................................................... 4, 5

*Picard v. Taylor (In re Park S. Sec., LLC)*,
    326 B.R. 505 (Bankr. S.D.N.Y. 2005) ......................................................... 20

*Roni LLC v. Arfa*,
    72 A.D.3d 413 (1st Dep't 2010)................................................................. 17

*TCB Creditor Recoveries Ltd. v. Arthur Andersen LLP*,
    [2008 CILR 486] ..................................................................................... 9

*Tese-Milner v. Beeler (In re Hampton Hotel Investors, L.P.)*,
    289 B.R. 563 (Bankr. S.D.N.Y. 2003) ......................................................... 20

*Thomas H. Lee Equity Fund V., L.P. v. Mayer Brown, Rowe & Maw, LLP,*
    612 F. Supp. 2d 267 (S.D.N.Y. 2009) ................................................................. 17

*Tyco Intern., Ltd. v. Kozlowski,*
    756 F. Supp. 2d 553 (S.D.N.Y. 2010), *lv to appeal denied,*
    2011 WL 2038763 (S.D.N.Y. May 24, 2011) .......................................................... 5

*Whitney Grp., LLC v. Hunt-Scanlon Corp.,*
    106 A.D.3d 671 (1st Dep't 2013) ......................................................................... 8

*Wight v. BankAmerica Corp.,*
    219 F.3d 79 (2d Cir. 2000) .................................................................................. 5

**Statutes**

Companies Law § 2 ................................................................................................. 19

Companies Law § 92 ............................................................................................... 10

Companies Law § 147 ............................................................................................. 19

**OVERVIEW**

Far from "ignor[ing]" the Complaint or "ask[ing] this Court to interpret the facts" (Opp. at 1, 12), DLA's[1] Motion explained how *the Complaint's* factual allegations demonstrate (1) ICP and Priore completely controlled the Funds; (2) DLA did not know about nor substantially assist the alleged misconduct by ICP and Priore; (3) such alleged misconduct is imputed to the Funds for purposes of *in pari delicto* in any event; and (4) such misconduct, and not DLA, proximately caused any alleged damages.

Fundamentally untrue is any suggestion that the Complaint pleads a "plethora of alleged facts demonstrating that [DLA] was at the center of a massive fraud." (*Id.* at 1.) Plaintiffs' allegations about DLA's knowledge and involvement are nothing but impermissible conclusions. For example, despite the Opposition's rhetoric, *the Complaint* never alleges any *facts* showing "DLA knew that ICP and Priore stole" from the Funds. (*Id.*) On the contrary, the Complaint's factual allegations demonstrate that DLA believed that the margin payments were permissible loans that would be repaid once market conditions improved. Incessantly reciting the conclusory mantra of "knew" changes nothing. Equally unavailing is the Opposition's strategy of repeating the Complaint's vitriol, such as that DLA purportedly "silenc[ed]" a "whistleblower," when there are absolutely no supporting factual allegations in the Complaint. (*Id.* at 2.)

Plaintiffs fail to address more than *50* of DLA's cases, including those demonstrating *in pari delicto*'s applicability. Arguing what the law "should be" or that Cayman law "should be" applied in the face of contrary New York authority is no substitute for an analysis of applicable *in pari delicto* law. (*Id.* at 19-26.) And contrary to another conclusory mantra—that the Funds supposedly received "absolutely no benefit" from the margin payments (*id.* at 4, 8)—the adverse interest exception does not apply because the Complaint repeatedly admits the Funds benefitted by avoiding a devastating Event of Default and receiving cash (interest) payments. These admissions also defeat the unsupported assertion that the payments had "no legitimate business purpose," the undisputed standard for whether ICP and Priore breached their fiduciary duties. (*Id.* at 8.) As a result, and because Plaintiffs cannot plead contrary facts

---

[1] The defined terms in the Motion have the same meanings herein.

that would undo their fatal admissions, DLA's Motion should be granted with prejudice.

## BRIEF RESPONSE TO PLAINTIFFS' MISLEADING LEGAL STANDARD DISCUSSION

Plaintiffs' proffered standard omits two crucial words: "[T]he Court must take the plaintiff's [***well-pled factual***] allegations as true . . . ." (Opp. at 5.) *See Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 191 (2d Cir. 2010) ("Conclusory allegations or legal conclusions masquerading as factual conclusions . . . will not suffice to [defeat] a motion to dismiss.").[2] Plaintiffs also omit a critical word regarding the heightened pleading standard under FRCP 9(b), which Plaintiffs concede applies to ***all*** of their claims here (Opp. at 5-6): While "a plaintiff may generally plead intent [and] knowledge," it must "plead[] a [***particularized***] factual basis that gives rise to a strong inference of" knowledge or intent. (*Id.* at 6.) Courts "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations;" actual knowledge allegations do ***not*** satisfy FRCP 9(b) if plaintiffs "fail[] to plead facts with the requisite particularity." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290, 293 (2d Cir. 2006) (internal quotations, citation and alterations omitted).

## ARGUMENT

## I.    PLAINTIFFS' OPPOSITION CONFIRMS THAT ALL OF PLAINTIFFS' CLAIMS ARE BARRED BY THE *IN PARI DELICTO* DOCTRINE AND THE *WAGONER* RULE

### A.    Plaintiffs' Argument That A Choice Of Law Analysis Is Required And Mandates Application Of Cayman Law Is Wrong

***First***, Plaintiffs do not cite a single case supporting the novel proposition that Cayman law applies to *in pari delicto* here. What Plaintiffs believe the law "should be," untethered to any authority, is irrelevant. (Opp. at 20-25 (arguing choice of law analysis "should be done;" Court "should" apply the "internal affairs doctrine;" and *in pari delicto* "should be governed" by Cayman law).)

***Second***, what Plaintiffs think the law "should be" is contrary to governing law, as demonstrated by Plaintiffs' own cases. For example, in *Cobalt Multifamily Investors I, LLC v. Shapiro*, 857 F. Supp. 2d

---

[2]  This Reply omits cases' subsequent histories where they were provided in the Motion or the Opposition.

419 (S.D.N.Y. 2012), the court found "***no legal support*** for the proposition that a New York court would apply one jurisdiction's law to the underlying claim and apply another jurisdiction's law to an affirmative defense." *Id.* at 434 (emphasis added). "[I]n this Circuit, the law governing an affirmative defense to a claim is the same as the law governing the claim itself." *Id.*

Plaintiffs concede New York law governs their aiding and abetting claims (*see, e.g.*, Opp. at 10); they also effectively admit that, under *Cobalt*, New York law applies to *in pari delicto* as well by arguing only that "the district court erred" in rejecting their "should be" argument. (*Id.* at 23 n.118.) Of course, Plaintiffs ignore that other courts have reached the same conclusion as *Cobalt*. *See, e.g.*, *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1540-41 (2d Cir. 1997) ("[T]here is no authority for the proposition that New York courts would apply the law of one jurisdiction to a . . . claim and the law of another jurisdiction to an affirmative defense . . . ."), *cert. denied*, 552 U.S. 864 (1997); *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 395 n.61 (S.D.N.Y. 2011) (applying *Wagoner* rule defense because tort claims were governed by New York law).

The *Cobalt* court (and many others cited by Plaintiffs) also rejected Plaintiffs' related "internal affairs doctrine" argument. 857 F. Supp. 2d at 432-34 (applying "greatest interest" choice-of-law test, including to *in pari delicto*, not "internal affairs doctrine"). Indeed, this Court reached the same conclusion in *Adelphia Communications Corp. v. Bank of America, N.A. (In re Adelphia Communications Corp.)*, 365 B.R. 24 (Bankr. S.D.N.Y. 2007). Under New York's choice of law rules, this Court held "it should . . . apply[] the law of the jurisdiction with the greatest interest." *Id.* at 40. The Court thus applied Pennsylvania law to both the aiding and abetting claim ***and*** the *in pari delicto* defense. *Id.* at 41, 46-47. Two years later, in *In re Magnesium Corp. of America*, 399 B.R. 722, 742-43, 764-66 (Bankr. S.D.N.Y. 2009), this Court again held that the law of the state of incorporation did not automatically apply and instead, utilizing the "greatest interest" test, concluded New York law applied to both aiding and abetting ***and*** *in pari delicto*.

Next, Plaintiffs alternatively argue that, even if imputation applies as a matter of ***law***, there still

"should be" a threshold **equitable** inquiry regarding *in pari delicto*. (Opp. at 24-25.) In so doing, Plaintiffs again improperly cite *Magnesium*, omitting its ruling that New York is ***not*** one of the jurisdictions that permits such an equitable analysis. 399 B.R. at 766 (noting that, "if the Court were writing on a clean slate" as to New York law it might conduct an equitable analysis, "[b]ut . . . the Court is not writing on a clean slate"). Instead, *in pari delicto* under New York law bars claims "[e]ven if . . . the trustee did nothing wrong, and is instead an innocent fiduciary trying to recover for the injured corporation." *Id.* at 762. Plaintiffs similarly falsely imply that *Adelphia* supports their "threshold equitable inquiry." (Opp. at 20.) Plaintiffs ignore that *Adelphia* was decided under **Pennsylvania** law, which, unlike New York law, "look[s] to the extent to which application of *in pari delicto* is equitable under the circumstances." 365 B.R. at 41, 46-47.[3]

> **Third**, even if a choice of law analysis were required (none is), Plaintiffs have not established that "the Cayman Islands clearly have the greatest interest" and that "New York . . . has little interest." (Opp. at 24.) Indeed, Plaintiffs' admissions later in their Opposition establish otherwise: ICP and Priore "work[ed] with DLA in the United States," and DLA's actions were "taken in the United States." (*Id.* at 37-38.)

> Plaintiffs seek to use New York law in New York courts to sue a law firm that "is a resident of New York" and is "registered to do business in New York" for allegedly helping primary wrongdoers "based in New York" who allegedly committed torts in New York. (Compl. ¶¶ 21-22, 34.) New York thus has a far greater interest here than the Cayman Islands—whose sole connection is that the Funds are incorporated there.[4] As the Southern District of New York held in a strikingly similar context:

> [T]he LAB contends that their tort claim is to be governed by the laws of the Cayman Islands

---

[3] Plaintiffs also have no support for their "should be" contention that *in pari delicto* is a "loss allocation" rule. (Opp. at 25.) There was no such holding in *Kirschner v. KPMG LLP*, 15 N.Y.3d 446 (2010) ("*Kirschner I*"). On the contrary, in the passage Plaintiffs quote, the Court of Appeal explicitly ***rejected*** the idea of "***reinterpret[ing] New York common law to permit*** corporations to shift responsibility for their own agents' misconduct to third parties." *Id.* at 475 (emphasis added).

[4] The Cayman Islands' interests are particularly nominal because the Funds are now defunct and ICP and Priore no longer have any affiliation with them. *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 194 (S.D.N.Y. 2006) (applying New York law where British Virgin Islands had little interest in having its law applied to aiding and abetting claims where "the Funds are defunct and the Citco Directors no longer serve on their boards").

and Delaware because the Funds were organized under the laws of those jurisdictions. New York law, however, governs this cause of action. It was brought in a New York federal court by and against entities and individuals located in New York and based on facts alleged to have occurred in New York. Significantly, the disposition of the claim—that the Brokers induced and participated in a breach of fiduciary duty by a money manager of investment funds—is vitally important to the financial industry, which is centered in New York. For these reasons, New York substantive law applies to the claim and, therefore, to . . . *in pari delicto* . . . .

*Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 306 n.16 (S.D.N.Y. 1998). *See also*

*Tyco Intern., Ltd. v. Kozlowski*, 756 F. Supp. 2d 553, 559-60 (S.D.N.Y. 2010) (New York law applied to

fraud claim against former officer; company was incorporated and had office in Bermuda), *lv to appeal*

*denied*, 2011 WL 2038763 (S.D.N.Y. May 24, 2011); *Pension Comm.*, 446 F. Supp. 2d at 194 (New York

law applied where "allegedly tortious conduct . . . in relation to the management of the Funds had little

more than a nominal connection to the BVI" where Funds were incorporated; "New York has a strong

interest in applying its law" to those who allegedly breach fiduciary duties and "aid and abet torts

masterminded and executed" in New York.).

## B. Plaintiffs Effectively Concede Imputation And Confirm Their Inability To Plead Any *Facts* Supporting The Limited Exceptions To Imputation

Plaintiffs do not deny that, under New York law (*and* Cayman law), Priore's and ICP's alleged

misconduct is presumptively imputed to Plaintiffs—and thus bars their claims under *in pari delicto* and

*Wagoner*[5]—unless an exception to imputation applies. (Mot. at 12-14; Opp. at 26, 28.) None does.

### 1. The Adverse Interest Exception Does Not Apply Because Plaintiffs Fail To Plead "Total Abandonment" And Admit The Funds Benefitted From The Alleged Misconduct

The narrow adverse interest exception to imputation applies only where the guilty manager has

"totally abandoned" the principal's interests (as opposed to merely subordinating them). (Mot. at 14.)

Further, if the principal (*i.e.*, Plaintiffs here) received *any* benefit from the alleged misconduct, the adverse

---

[5] Plaintiffs argue incorrectly and without authority that "the *Wagoner* rule does not apply" to them "because a Chapter 15 petition does not establish an estate under § 541 of the Bankruptcy Code." (Opp. at 28 n.137.) The presence or absence of an estate is a red herring. Courts routinely apply the *Wagoner* rule to hold that foreign liquidators pursuing claims in Bankruptcy Court lack standing. For example, in *Wight v. BankAmerica Corp.*, 219 F.3d 79, 81-82 (2d Cir. 2000), the Second Circuit held that the *Wagoner* rule could bar claims by "liquidators appointed by courts in England and the Cayman Islands" that had "filed a petition" in Bankruptcy Court under the predecessor to Chapter 15. Foreign liquidators, "like the trustees of a bankruptcy estate, . . . stand in the shoes of the defunct corporation" and may be subject to the *Wagoner* rule. *Id.* at 86-87.

interest exception is inapplicable as a matter of law. (*Id.* at 14-16.) Plaintiffs' Complaint and Opposition affirmatively concede that the Funds derived several benefits from the alleged misconduct in the form of quarterly interest payments directly to them (Opp. at 29) and preservation of their massive investment in Triaxx by avoiding an Event of Default that would have caused the Funds tremendous losses. (*Id.* at 3; *see also* Mot. at 15-16.) On this basis alone, the adverse interest exception simply does not apply.

Plaintiffs cannot escape this inexorable conclusion by misstating the standard for pleading the adverse interest exception. It is ***not*** whether ICP and Priore "directed" their misconduct at (*i.e.*, stole assets from) the Funds. (Opp. at 31.) Indeed, the ***only*** case Plaintiffs cite, *Kirschner I*, confirms otherwise. There, the Court of Appeal explained that the adverse interest exception simply turns on whether "there is a benefit to . . . the corporation," because any fraud that benefits the corporation simply "is not 'adverse.'" 15 N.Y.3d at 467. Judge Ciparick agreed even in dissent, making clear the test is ***only*** whether there is a benefit or not, regardless of whether money was stolen from the company or third parties, because "***virtually any benefit to the corporation/principal will defeat the exception***." *Id.* at 480 (emphasis added). A New York court recently confirmed that the adverse interest exception is inapplicable even where the misconduct is directed at the company itself, as long as the company also derived some benefit. *Mosionzhnik v. Chowaiki*, 41 Misc.3d 822, 830-31 (Sup. Ct. N.Y. Cty. 2013) (adverse interest exception inapplicable where director's theft from company also resulted in benefit to company as increased sales).

Nor can Plaintiffs avoid this well-settled authority by misstating cases plainly holding that the adverse interest exception turns ***solely*** on whether the company derived some benefit from the alleged misconduct. (Opp. at 31-33.) For example, in *Concord Capital Management, LLC v. Fifth Third Bank*, 2011 WL 10564345 (Sup. Ct. N.Y. Cty. Dec. 1, 2011), just as in *Mosionzhnik*, the court found the adverse interest exception inapplicable even though the corporate managers had "***loot[ed]***" the corporation. *Id.* at *1 (emphasis added). So long as "a fraud brings money into the company's own coffers, the adverse interest exception is unavailable, irrespective of whether the benefit to the agent is great and the benefit to

the company is small." *Id.* at \*7-8. The Appellate Division affirmed, holding that the trial court "properly declined to apply the adverse interest exception" because, "[a]lthough the complaint alleges that plaintiffs' former executives looted plaintiffs, it also alleges that the corrupt executives' scheme" benefitted the company. *Concord Capital Mgmt., LLC v. Bank of America, N.A.*, 102 A.D.3d 406, 407 (2013).

Similarly, *Bullmore v. Ernst & Young Cayman Islands*, 861 N.Y.S.2d 578 (Sup. Ct. N.Y. Cty. 2008), rejected the adverse interest exception because "the Fund stood to receive some degree of financial benefit" from the alleged wrongdoing, and the exception is inapplicable "where a corporation benefits ***to any extent*** from the alleged wrongful acts of its agents." *Id.* at 582 (emphasis added). And in *Kirschner v. KPMG LLP*, 626 F.3d 673 (2d Cir. 2010), the Second Circuit affirmed rejection of the adverse interest exception where "the complaint [was] saturated by allegations that Refco received substantial benefits from the insiders' alleged wrongdoing." *Id.* at 676 (quotations and citation omitted).

Plaintiffs simply ignore their own Complaint's admissions that the misconduct benefitted the Funds. (Opp. at 29-30.) ***First***, the Complaint repeatedly alleges the Triaxx investors (which included the Funds) received interest payments stemming from the margin payments. (Compl. ¶¶ 1, 9, 10, 64-66, 69-70, 91, 93, 97.) The facile suggestion that this benefit purportedly was "small" (Opp. at 29 (emphasis omitted)) fails as a matter of law, as explained above and in DLA's Motion. (Mot. at 14-16.)[6] ***Second***, Plaintiffs may not use hindsight to argue that the Funds did not benefit from avoiding an Event of Default. (Opp. at 30.)[7] As DLA's Motion explained (Mot. at 16 n.9), the relevant temporal inquiry is the ***contemporaneous*** benefit the Funds received when the margin payments prevented their "tens of millions of dollars" investment in Triaxx Notes, which made up "approximately 50% of the SCIF Funds' net asset value," from being liquidated by Barclays at a loss. (Compl. ¶¶ 3, 33.) Thus, "***it is immaterial that it has***

---

[6]  Plaintiffs alternatively and irrelevantly argue (without authority, contrary to the foregoing authorities and without any supporting, particularized factual allegations), that the Funds would have received a ***greater*** benefit than what they got from the interest payments if the CDO Transaction simply had been liquidated in 2008. (Opp. at 29.) Moreover, while the Opposition asserts that upon an Event of Default the Funds would have "liquidated their Triaxx Funding investment for another approximately $44 million" (*id.*), the Complaint nowhere alleges this.

[7]  Plaintiffs admit they may not use hindsight (Opp. at 30), but their arguments are exactly that. For example, they claim there was no benefit in extending the CDO Transaction "until the next margin call to Barclays could not be met" (*id.*), but when the payments were made it could not have been known there would be a "next margin call," nor that it "could not be met." (*Id.*)

*turned out* that it would have been better for [ICP and Priore] to have acted differently." *Kirschner I*, 15

N.Y.3d at 468 (emphasis added; quotations omitted).[8]

### 2. Plaintiffs Have Pled That ICP And Priore Were "Sole Actors," Which Completely Negates The Adverse Interest Exception

DLA previously explained that, even if Plaintiffs could invoke the adverse interest exception (they

cannot), it nonetheless does not apply here because ICP and Priore were the Funds' "sole actors." (Mot. at

17-18.) The Complaint, including documents referenced therein,[9] establish that the Funds expressly

anointed in writing Priore and ICP as their "sole actors." Plaintiffs offer *no response*.

Instead, Plaintiffs' attempt to distinguish applicable case law on the ground that some (not all) of

the cases purportedly involved only a "sole shareholder," whereas the Funds allegedly "had numerous

innocent investors" (Opp. at 34), both mischaracterizes the cases and misstates the law. Even leaving

aside that the Complaint does *not* plead the existence of any alleged "innocent investors," neither the

number of shareholders nor their purported innocence has anything to do with the sole actor rule. The sole

actor rule is about *who has been granted the power to run the company*, nothing more. (Mot. at 17-18.)

Thus, while having a company run by a sole shareholder is one way the sole actor rule can apply,

it *also* applies "where the corporation bestows upon its agent unfettered control and allows the agent to

operate without meaningful supervision." *Breeden v. Kirkpatrick & Lockhart, LLP (In re Bennett Funding

Grp., Inc.)*, 268 B.R. 708, 709 (S.D.N.Y. 2001) (internal citation omitted). "[T]he *Wagoner* rule imputes

the misconduct of corrupt management to the corporation . . . where the corporation delegates all authority

---

[8]  Plaintiffs cannot avoid *in pari delicto* by pointing to cases that declined to apply it for reasons inapplicable here. (Opp. at 30, 33 & nn.149, 159-60.) *Adelphia* is inapposite because, as noted, it was decided under Pennsylvania law. 365 B.R. at 46-47. Also, the instant case is completely distinguishable from *Adelphia*. Plaintiffs' Complaint makes clear that the Funds received far more than a "peppercorn" of benefit from the margin payments, and there are no factual allegations suggesting that DLA "knowingly and substantially assist[ed] insider misconduct." *See id.* at 56-57. Equally unavailing is *Whitney Grp., LLC v. Hunt-Scanlon Corp.*, 106 A.D.3d 671 (1st Dep't 2013). The court there held as a matter of law that the adverse interest exception did *not* apply because defendants "allege that plaintiff received allegedly significant and substantial benefits" relating to the "unauthorized loans," and plaintiff "failed to establish as a matter of law" that there had been total abandonment. *Id.* at 672. Finally, in *Krys v. Sugrue (In re Refco Secs. Litig.)*, 779 F. Supp. 2d 372 (S.D.N.Y. 2011), the court denied a motion to dismiss *not* because there were fact issues regarding a benefit, but because the complaint failed to plead any benefit in the first place. *Id.* at 377. Here, the Complaint admits there several benefits to the Funds. (*Supra* pp. 5-8; Mot. at 15-16.)

[9]  There is no dispute that documents in DLA's Appendix and Request for Judicial Notice may be considered. (Mot. at 6 n.4.)

over a portion of its business to a particular manager," *id.* at 710—just as Plaintiffs' Complaint admits the Funds delegated all authority to ICP and Priore. (Compl. ¶¶ 25-27, 34; Mot. Appendix, Ex. E.) *See also Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 360 (3d Cir. 2001) ("Courts have additionally applied the [sole actor] exception to cases in which the agent 'dominated' the corporation."); *McHale v. Citibank, N.A. (In re 1031 Tax Group, LLC)*, 420 B.R. 178, 202 (Bankr. S.D.N.Y. 2009) ("The sole actor rule has been applied . . . when all of the corporation's management participated in the wrongdoing.").[10]

### 3. Plaintiffs' Reliance On Conclusory Allegations Cannot Cure Their Failure To Plead Any *Facts* Establishing The Existence Of Innocent Insiders

The "innocent insiders" exception is relevant only as an exception to the sole actor rule, which in turn is only relevant if the adverse interest exception applies. None of this is relevant if the adverse interest exception is inapplicable (as is the case here as discussed above (*supra* pp. 5-9) and before (Mot. at 18-19)). But even considering the "innocent insiders" exception, the six dispositive authorities cited by DLA—all of which Plaintiffs ignore—hold that the innocent insiders exception applies only if Plaintiffs can plead **facts** demonstrating that there were corporate decision-makers who (1) were not involved in the wrongdoing **and** (2) had actual authority and the ability to stop it. (*Id.* at 19-21.) Plaintiffs must plead facts showing "who was innocent, and how the wrongful conduct could have been stopped." *Magnesium*, 399 B.R. at 768 n.158.

Plaintiffs plead no such facts as to the purportedly innocent directors. It is **not** sufficient simply to argue that "[t]he exact steps that the independent directors would have taken to stop the wrongdoing is a factual matter that is inappropriate for resolution here." (Opp. at 34-35.) Plaintiffs cite no authority for this proposition, and many unrefuted authorities confirm that it fails as a matter of law. (Mot. at 19-21.)

---

[10] Plaintiffs argue that the Cayman version of the sole actor rule does not apply. (Opp. at 28.) But Cayman law is irrelevant to the *in pari delicto* doctrine here. (*See supra* pp. 2-5.) Equally important, Plaintiffs fail to acknowledge a directly controlling, contrary decision, *TCB Creditor Recoveries Ltd. v. Arthur Andersen LLP*, [2008 CILR 486] (Reply Appendix, Ex. A). There, the Grand Court of the Cayman Islands barred a company from suing a third-party auditor for damages arising out of corporate wrongdoers' malfeasance. Because the corporate wrongdoers "were the controlling minds and will of the company," "[t]he rules of attribution require the dishonesty of the controlling minds and will to be imputed to the company." *Id.* at 508. ICP's and Priore's misconduct is imputed to the Funds for the same reasons. (Compl. ¶¶ 25-27, 34; Mot. Appendix, Ex. E.)

While Plaintiffs claim there also were "numerous innocent" shareholders (Opp. at 34), shareholders are not *per se* "insiders" with the requisite authority. Otherwise, this exception would eviscerate the *in pari delicto* doctrine. Moreover, the Complaint identifies only three "shareholders" (Compl. ¶ 18), and they are analytically irrelevant because the Complaint admits that they were beholden to and controlled by Priore. (Mot. at 21 n.10.) The Opposition ignores this admission. In addition, the Complaint pleads no facts showing that the shareholders (or directors) "had the power to stop ICP's and Priore's fraud by . . . placing the company in" liquidation. (Opp. at 34.) Under Cayman law, a shareholder may place a company into liquidation *only* if it files a winding up petition *and* a court agrees that liquidation is appropriate. Companies Law § 92(e) (Reply Appendix, Ex. B). This is hardly unilateral "power" within the meaning of the doctrine to stop the alleged misconduct. *See In re Arbco Capital Mgmt., LLP*, 498 B.R. 32, 48 (Bankr. S.D.N.Y. 2013) ("The touchstone of the innocent insider exception is . . . whether the innocent person or persons inside the corporation had the power to stop the fraud.").

## II. PLAINTIFFS' FAILURE TO IDENTIFY WELL-PLED FACTUAL ALLEGATIONS CONFIRMS THAT THEY DO NOT STATE AIDING AND ABETTING CLAIMS

### A. Plaintiffs Cannot Overcome The Complaint's Failure To Plead Any *Facts* Supporting The Elements Of An Underlying Fraud

Plaintiffs have no explanation for their failure to identify a specific misrepresentation that ICP or Priore ever made to the Funds, nor for the absence of a fraud claim in their separate lawsuit against ICP and Priore. In fact, the Complaint never alleges that *anyone* ever made *any* statement to the Funds, fraudulent or otherwise. Plaintiffs also do not deny that they have failed to plead that any misrepresentations were made with intent to defraud, or that the Funds ever reasonably relied to their detriment. (Mot. at 21-22.)

Instead, the Opposition invokes general allegations that ICP and Priore did not disclose their alleged malfeasance to the Funds. (Opp. at 9-10.) But even the cases cited by Plaintiffs demonstrate that a generalized failure to disclose is insufficient to plead fraud. Plaintiffs also must, but do not, plead: (1) the specifics of what ICP and Priore told the Funds about the margin payments and thus that material

information was concealed, *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 123-24 (2d Cir. 1984); and (2) that ICP and Priore "possesse[d] the requisite intent to deceive" the Funds. *Kaufman v. Cohen*, 307 A.D.2d 113, 119-20 (1st Dep't 2003) (quotations and citation omitted).

> **B.** **There Can Be No Breach Of Fiduciary Duty Where The Complaint Fails To Plead Any *Facts* Establishing That The Margin Payments Were Inherently Improper**

The parties agree that the aiding and abetting breach of fiduciary duty claim fails unless Plaintiffs allege facts demonstrating that the margin payments were so inherently improper, and there was "no legitimate business purpose," that ICP and Priore necessarily breached a duty to the Funds. (Mot. at 22-23; Opp. at 7-9.) As DLA explained, the Complaint does not plead such facts. (Mot. at 22-23.)

Plaintiffs offer two insufficient responses. *First*, Plaintiffs ask the Court to disregard both the Complaint's admission that DLA advised that the CDO Transaction's structure "allowed" the margin payments and Plaintiffs' failure to allege facts showing this advice was wrong (Opp. at 13 n.62; Mot. at 28), because this obliterates Plaintiffs' conclusory allegation that the payments were inherently improper. But specific factual allegations trump legal conclusions. *Magnesium*, 399 B.R. at 768. This is not "ask[ing] the Court to interpret facts in DLA's favor" (Opp. at 12), but rather pointing out what the Complaint alleges.

Indeed, the Complaint further admits that all parties, including DLA, repeatedly stated that the margin payments were loans. (Mot. at 8-9, 25-27.) Thus, not only were they "allowed," they also were not inherently improper. Plaintiffs cannot ignore ***all*** of these allegations based on the conclusory mantra that DLA allegedly was lying. (Opp. at 8.) Absent from the Complaint are any ***facts*** pled showing that DLA (or Barclays, or its counsel at Cadwalader) was lying when it referred to the payments as loans. By contrast, the Complaint makes clear that everyone involved in the CDO Transaction believed the margin payments were loans[11]—and, as DLA's Motion explained and the Opposition admits, none of the parties to

---

[11] It is not DLA's burden to establish that the payments *were* loans, as Plaintiffs' Opposition implies. (Opp. at 8.) It is Plaintiffs' burden to plead facts establishing that they were not. The Opposition says the Complaint pleads "specific . . .

*(Cont'd on next page)*

the CDO Transaction ever expressed concern about their propriety.  (Mot. at 23; Opp. at 8 n.30.)[12]

*Second*, Plaintiffs' attack on the business judgments underlying the margin payments is not a substitute for pleading their impropriety.  That the margin payments allegedly were "unsecured" and "non-recourse" (Opp. at 8, 13 n.62) does not take them outside the business judgment rule; loans can be unsecured, contingent on certain events, or non-recourse if those events do not occur.  (*See* Mot. at 9 n.6.) Nor can Plaintiffs argue there was "no legitimate business purpose" for the payments (Opp. at 8) when the Complaint's factual allegations admit that they avoided an Event of Default that would have wiped out the Funds' massive investments in the CDO Transaction.  (Compl. ¶¶ 2-3, 31, 33; Mot. Appendix, Ex. D.) This too vitiates Plaintiffs' arguments, which appear nowhere in the Complaint, that ICP and Priore "made the transfers to Barclays in bad faith" or were "conflicted fiduciaries."  (Opp. at 8-9.)[13]

Ultimately, while the Opposition ***characterizes*** the margin payments by means of conclusory rhetoric—*e.g.*, "stolen," "misappropriated," "scheme," and "dishonest" (*id.* at 1-5, 7-8, 10, 12, 16, 29, 31-33, 35, 37, 39-40)—Plaintiffs fail to identify any ***factual*** allegations demonstrating that the payments were inherently improper.  The aiding and abetting claim thus fails for lack of a breach of fiduciary duty.[14]

### C.  Alternatively, Plaintiffs' <u>*Factual*</u> Allegations Admit That DLA Did Not Have The Requisite Actual Knowledge Of ICP's And Priore's Alleged Misconduct

DLA previously demonstrated how ***Plaintiffs admit***—without any "inferences drawn in [DLA's] favor" (Opp. at 6)—DLA's belief that the margin payments were authorized and were loans that would be

---

*(Cont'd from previous page)*

allegations" that the margin payments "were not loans," but Plaintiffs are unable to point to any such allegations.  (*Id.* at 7-8.) There are none.

[12]  DLA is not arguing that the absence of any concern regarding the payments *per se* means "there could not have been a breach of fiduciary duty."  (Opp. at 8 n.30.)  DLA's point is that this fact pled in the Complaint, combined with the lack of any factual allegations that the payments were inherently improper, confirms that Plaintiffs do not plead a breach of fiduciary duty.

[13]  Plaintiffs' cases are unavailing.  (Opp. at 9 n.37.)  *Lippe v. Bairnco Corp.*, 230 B.R. 906 (Bankr. S.D.N.Y. 1999) does not contain the language Plaintiffs purport to quote from it.  *Amfesco Industries, Inc. v. Greenblatt*, 172 A.D.2d 261 (1st Dep't 1991) is irrelevant because, unlike here, the complaint did more than merely disagree with a business judgment:  defendants caused the corporation to purchase new production facilities that they knew it could never use and deliberately failed to take any action to preserve the corporation's assets in the face of its known and mounting losses.  *Id.* at 262-64.  Likewise, *Patrick v. Allen*, 355 F. Supp. 2d 704 (S.D.N.Y. 2005) is irrelevant because the conflict of interest there arose from the directors' reduced fees for membership in an exclusive club in exchange for a below-market lease from the corporation.  *Id.* at 711.

[14]  Plaintiffs do not deny their failure to sue ICP for breach of fiduciary duty in their separate lawsuit.  (Mot. at 10, 22.)

repaid pursuant to the Repayment Mechanism once market conditions improved.  (Mot. at 24-31.)

Plaintiffs concede that they must plead facts demonstrating that DLA had ***actual*** knowledge that these payments purportedly were ***not*** authorized or loans; and, that allegations DLA "should have known" this due to "red flags" do not suffice.  (Opp. at 10-11, 15.)  Yet the Complaint does not allege a single fact (as opposed to conclusions) demonstrating that DLA ever learned, for example, there was ***not*** a loan; that the loan would ***not*** be repaid; nor that ICP and Priore were engaged in ***any*** misconduct.

Plaintiffs also ignore DLA's analysis of Plaintiffs' "knowledge" allegations.  (Mot. at 24-31.) They therefore concede that (1) DLA's knowledge regarding the margin payments came from its clients and third parties; (2) Barclays, Cadwalader, ICP and Priore told DLA the payments were loans and there was an agreement for SCIF Master to be repaid via the Repayment Mechanism—a mechanism proposed by Barclays and Cadwalader; (3) DLA repeated this ***same*** information (which DLA was entitled to rely on and accept as true) to numerous third parties, including the Funds' administrator; and (4) DLA never hid its work related to the margin payments.  (Mot. at 24-31; Compl. ¶¶ 37, 45, 50, 56, 71, 79, 85, 90, 101-02, 104; Mot. Appendix, Exs. C-D, F-G.)

The arguments Plaintiffs do make are unavailing for several reasons.  ***First***, Plaintiffs' concept of "conscious avoidance" misstates applicable law.  (Opp. at 11.)  As one of Plaintiffs' cited cases recognizes, "[t]here is dispute in the case law on whether 'conscious avoidance' is sufficient for an aiding and abetting claim," and "[o]ther courts in the Southern District have held that even conscious avoidance is not enough."  *Krys v. Aaron (In re Refco Inc. Secs. Litig.)*, 826 F. Supp. 2d 478, 517-19 (S.D.N.Y. 2011).  Moreover, even if conscious avoidance were enough, the standard for pleading it is exceedingly high, requiring particularized factual allegations demonstrating "that it can almost be said that [DLA] actually knew" of Priore's and ICP's alleged misconduct "because [DLA] suspected [the misconduct] and realized its probability, but refrained from confirming it in order later to be able to deny knowledge." *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 544-45 (S.D.N.Y. 2009) (quotations and citation omitted) (finding allegations "nowhere near sufficient to" plead conscious avoidance).  Plaintiffs' Complaint does

not satisfy that demanding standard for authorized payments, as DLA has previously discussed at length. (Mot. at 24-31; *supra* pp. 11-12.)

Plaintiffs' cited authorities further confirm this, particularly the primary case on which the Opposition relies. *See Oster v. Kirschner*, 77 A.D.3d 51 (1st Dep't 2010). There, the court found conscious avoidance adequately pled only where, prior to undertaking securities law work for the corporate wrongdoers, the defendant law firm ***knew*** that their clients had "extensive criminal backgrounds" and had been banned from the securities industry for engaging in fraudulent investment schemes. Yet, despite knowing these facts, the law firm "chose to look the other way" and agreed to prepare documents for their clients to make a securities offering. *Id.* at 57. Plaintiffs have not alleged anything close to this level of conscious avoidance.

Plaintiffs then proceed to mischaracterize *Oster* as imposing a strict-liability standard. (Opp. at 11.) On the contrary, the passage Plaintiffs cite did not even address the pleading standard for actual knowledge. Instead, the court merely observed that the facts of *Oster* were very different from cases where attorneys "had represented parties in transactions later found to be objectionable." 77 A.D.3d at 56. *Oster* was different because "investments in Cobalt were from their inception objectionable because Cobalt was offered to investors who did not meet Regulation D criteria and was sold by persons not qualified to do so, and because ***the company was being run by convicted felons, one of whom was banned from the securities industry***." *Id.* (emphasis added).[15]

***Second***, Plaintiffs' conclusory allegations of knowledge and "red flags" are contradicted by the Complaint's factual admissions and in any event do not constitute actual knowledge. (Opp. at 11, 15.) For example, the assertions that DLA knew the Funds "had no obligation to" make the margin payments

---

[15] Plaintiffs' only other conscious avoidance case is also completely distinguishable. In *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y 2010), which arose out of the Madoff fraud, the court found conscious avoidance adequately pled where plaintiffs alleged facts demonstrating that defendants "were aware of the roles consolidated in Madoff, the lack of transparency into his operations, his family members' involvement in key positions at his firm, his lack of segregation of important functions, his use of an unknown auditing firm, his use of paper trading records, and his implausibly consistent investment returns." *Id.* at 444. Plaintiffs' Complaint here pleads nothing close to these facts as to DLA.

and that there was no obligation "to repay SCIF Master" (whom DLA did not represent anyway) (*id.* at 11)

are contradicted by the Complaint's admissions that (1) the margin payments were permissible; (2) they

were made to protect the Funds' investment in the CDO Transaction and to avoid a catastrophic Event of

Default; and (3) ICP, Priore and Barclays told DLA that these were loans and that SCIF Master would be

repaid. (Mot. at 15-16, 24-29.) Further, Plaintiffs concede that DLA told third parties it understood the

margin payments to be loans. (Opp. at 13.) Aside from the absence of any factual allegations that DLA

did not believe, in good faith, that the margin payments were loans, Plaintiffs also ignore that many of

DLA's statements were made to ICP personnel whom Plaintiffs contend were ***in on the fraud***. (Mot. at

26.) The notion that DLA had any reason to lie (Opp. at 13) to its alleged co-conspirators about the nature

of the payments is simply not "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Relatedly, Plaintiffs cannot argue that DLA allegedly knew that there was no obligation for the

Trustee to follow ICP's direction to cause Triaxx to repay SCIF Master. (Opp. at 13.) Leaving aside that

DLA's undisputed belief that repayment ***would*** occur dooms Plaintiffs' claims (Mot. at 25-27), the

Complaint does ***not*** plead that DLA knew that there was no obligation. (Opp. at 13.) On the contrary, the

Complaint admits that DLA knew ICP was authorized under the MRA to issue an irrevocable instruction

to the Trustee to pay the funds to SCIF Master. (Compl. ¶¶ 53, 85, 90, 103-04.) While the Complaint

alleges that DLA thought the Trustee theoretically could disagree with that instruction, it also admits that

DLA believed it would be legally incorrect for the Trustee to do so. (*Id.* ¶ 85; Mot. Appendix, Ex. D.)[16]

***Third***, Plaintiffs' attempt to distinguish some (but not all) of the cases cited in DLA's Motion fails.

Plaintiffs dismiss *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553 (2009) because the

complaint there "admitted that the law firm relied on" information provided by a third party (Opp. at 14),

but the Complaint here admits the same thing. (*Supra* p. 5; Mot. at 24-31.) While Plaintiffs claim that,

unlike the plaintiffs in *Mateo v. Senterfitt*, 82 A.D.3d 515 (1st Dep't 2011), they "do not rely on

---

[16] Similarly, White's testimony to the SEC that he "did not know" one way or the other whether the Trustee had ***agreed*** to repay SCIF Master does not demonstrate that "DLA knew that the trustee had no ***obligation***" to follow ICP's direction to cause Triaxx to repay SCIF Master. (Opp. at 13-14 (emphasis added).)

allegations of recklessness to establish knowledge" (Opp. at 15-16), the whole purpose of the Complaint's red flag contentions is to plead that DLA purportedly was reckless in not realizing what ICP and Priore allegedly were doing. And while Plaintiffs try to distinguish *Albion Alliance Mezzanine Fund, L.P. v. State Street Bank & Trust Co.*, 8 Misc.3d 264 (Sup. Ct. N.Y. Cty. 2003) because plaintiffs there alleged knowledge based on "red flags" (Opp. at 15), Plaintiffs' Complaint does the exact same thing.[17]

### D. DLA's Routine Transactional Counsel Work Cannot Have Substantially Assisted The Alleged Misconduct As A Matter Of Law

It is undisputed that DLA had no role in ICP's and Priore's alleged theft from the Funds. Instead, DLA's alleged role was limited to facilitating the subsequent use of those funds to satisfy margin calls. In that regard, though, Plaintiffs allege that DLA simply provided routine legal services; there are no factual allegations of knowledge that the money purportedly had been obtained improperly. (Mot. at 24-36.)

Plaintiffs once again have no answer. Their Opposition never disputes the Complaint's concessions that: (1) DLA did ***not*** propose either that ICP and Priore cause a third party to make Triaxx's margin payments or use the Funds' money in particular for that purpose—ICP and Priore initiated both of those decisions alone (Compl. ¶¶ 43-44, 46); (2) DLA ***never*** interacted with anyone from the Funds regarding the margin loans, including "never communicated with any counsel" for the Funds (*id.* ¶ 29); and (3) DLA was ***not*** involved with the actual taking of money from the Funds. (*Id.* ¶¶ 8, 47, 62-63.)

Plaintiffs argue without relevant authority that DLA can be liable for "provid[ing] routine legal services" and that DLA's "conduct need not be abnormal to constitute substantial assistance" (Opp. at 17 (quotations and citations omitted)), but they fail to address the authorities rejecting this argument. (Mot. at 32, 35.) In particular, Plaintiffs ignore *CRT Investments, Ltd v. BDO Seidman, LLP*, 85 A.D.3d 470 (1st Dep't 2011), which held that substantial assistance "means ***more*** than just performing routine business

---

[17] For example, Plaintiffs claim DLA should have known of the alleged misconduct because the Funds allegedly were not represented by counsel. (Opp. at 11.) Notably, DLA pointed out, and the Opposition fails to dispute, that the Complaint does ***not*** plead DLA actually knew this. (Mot. at 30.) Plaintiffs also contend DLA should have known the margin payments were improper because Barclays allegedly demanded that certain language be included in the legal documents regarding the payments. (Opp. at 11.) DLA's Motion challenged Plaintiffs to identify ***any*** allegation in the Complaint supporting the assertion that Barclays—which openly accepted $36.5 million in margin payments and proposed the Repayment Mechanism in the first place—somehow believed the margin payments were improper. (Mot. at 30.) The Opposition has no answer.

services for the alleged fraudster." *Id.* at 472 (emphasis added). *See also Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 F. App'x 636, 643 (2d Cir. 2012) ("'[S]ubstantial assistance' . . . 'means more than just performing routine business services for the alleged fraudster.'") (quoting *CRT Investments*, 85 A.D.3d at 472); *Learning Annex, L.P. v. Blank Rome LLP*, 106 A.D.3d 663, 663 (2013) ("The claim that defendants provided routine legal services to the alleged fraudsters is likewise insufficient . . . ."), *lv to appeal denied*, 22 N.Y.3d 859 (2014).[18]

The three cases Plaintiffs cite (Opp. at 17 n.95) simply do not support their position. In two of them, the courts were not confronted with whether routine legal services can constitute substantial assistance. *See Thomas H. Lee Equity Fund V., L.P. v. Mayer Brown, Rowe & Maw, LLP*, 612 F. Supp. 2d 267, 288-89 (S.D.N.Y. 2009); *Oster*, 77 A.D.3d at 56-57. In *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247 (S.D.N.Y. 2005), the defendants were alleged to have knowingly assisted with transactions that had no possible legitimate purpose. *Id.* at 257. By contrast, Plaintiffs' Complaint admits the legitimate purpose underlying the margin payments—avoiding an Event of Default (*supra* pp. 5-8)—and in any event does not plead that DLA had actual knowledge of any impropriety.[19]

Plaintiffs alternatively urge—again based on inapposite cases—that "ordinary" services can be substantial assistance "when there is an extraordinary motivation to aid in the fraud." (Opp. at 17.)[20] But

---

[18] *See also In re LightSquared Inc.*, 504 B.R. 321, 357 (Bankr. S.D.N.Y. 2013) (dismissing aiding and abetting claim where "Harbinger does not explain or allege how these acts fall outside of normal bank and broker services"); *Roni LLC v. Arfa*, 72 A.D.3d 413, 414 (1st Dep't 2010) (affirming dismissal of aiding and abetting claims where defendant lawyers merely "structured and organized entities that acted as the brokers . . . activities which are part of ordinary real estate lawyering"). The Opposition addresses only one of the many cases the Motion cited (Mot. at 31-36) regarding substantial assistance, thus conceding the points DLA made as to the remainder. While Plaintiffs are correct that DLA inadvertently misdescribed *Broad-Bussel Family LP v. Bayou Grp. LLP (In re Bayou Hedge Funds Inv. Litig.)*, 472 F. Supp. 2d 528 (S.D.N.Y. 2007) in a one-sentence parenthetical the first time the case was cited (Mot. at 32), the Motion's second citation correctly described the case. (*Id.* at 35.) Plaintiffs conspicuously do not dispute that this case fully supports DLA's Motion because, just like in *Broad-Bussel*, Plaintiffs' Complaint "does not identify a single affirmative act by [DLA] that assisted, let alone substantially assisted, [ICP's and Priore's] primary violations," *i.e.*, stealing from the Funds. (*Id.* quoting *Broad-Bussel*, 472 F. Supp. 2d at 533-34).)

[19] Cases cited elsewhere in the Opposition further reject Plaintiffs' argument regarding routine legal services. In *Kaufman*, the defendant merely "assist[ed] . . . in reacquiring an interest in the Falchi building, ***not an unusual activity*** for those in the business of commercial real estate development, [which] hardly constitutes assisting in a breach of fiduciary duty by itself." 307 A.D.2d at 126 (emphasis added). The Second Circuit stated in *Armstrong v. McAlpin*, 699 F.2d 79 (2d Cir. 1983), that "we are not prepared to hold that a broker who merely executes an investment manager's orders for improper purchases or sales can be held liable as an aider and abettor . . . ." *Id.* at 91-92.

[20] Neither *Armstrong* nor *Winnick* involved any "extraordinary motivation" by the alleged aider and abettor. (Opp. at 17.)

17

Plaintiffs pled no such "motivation;" and, even if they did, DLA's purported "motivation to earn fees and maintain its relationship with ICP" (*id.*) is ***not*** sufficient as a matter of law.  *See, e.g.*, *In re Agape Litig.*, 773 F. Supp. 2d 298, 321-22 (E.D.N.Y. 2011) (similar allegations did not plead "incentive to aid and abet" fraud "because such a motive is generalized and could be imputed to any for-profit endeavor") (citation omitted); *In re Sharp Intern. Corp.*, 281 B.R. 506, 516 (Bankr. E.D.N.Y. 2002) ("Courts have consistently found that allegations of ordinary economic motives are insufficient to plead a strong financial motive to aid the fraud."), *aff'd*, 302 B.R. 760 (E.D.N.Y. 2003), *aff'd*, 403 F.3d 43 (2d Cir. 2005).[21]

Finally, Plaintiffs once again make arguments that are contrary to the Complaint's factual admissions.  (Opp. at 16.)  For example, as the Motion demonstrated, DLA did not allegedly assist ICP and Priore by "silenc[ing]" any purported "whistleblower."  Instead, the Complaint and documents it incorporates admit that Woroniecki independently concluded—based on what Priore (***not*** DLA) told him—that the payments could be recorded as loans on SCIF Master's books.  (Mot. at 33.)  The Opposition offers no substantive response, opting instead for rote repetition of conclusory allegations.  (Opp. at 2, 16.)  Plaintiffs also do not and cannot deny that the various tasks the Opposition states DLA performed—*e.g.*, "negotiated" with other parties and "drafted" documents that memorialized the payments (*id.*)—were quintessential transactional counsel services that documented ***after the fact*** business decisions by ICP, Priore, and Barclays.  As a matter of law, this too is not substantial assistance.  (Mot. at 31-32.)

### E.      Plaintiffs Effectively Concede That They Do Not Plead Proximate Causation

Plaintiffs have not pled facts demonstrating that DLA's purported substantial assistance in the primary violation proximately caused the Funds' alleged harm.  (Mot. at 36.)  They simply repeat the unsupported ***conclusion*** that they "specifically plead that DLA's conduct proximately caused the SCIF Funds' damages."  (Opp. at 19.)  They do not even attempt to identify any "specifically ple[d]" ***facts***.

Plaintiffs also accuse DLA of "equat[ing] proximate causation with the commission of the

<hr>

[21]  DLA previously explained the fallacy of Plaintiffs' conclusory allegation that "'Priore, ICP, and White agreed to use $200,000 from SCIF Master to pay DLA's outstanding legal bills.'"  (Mot. at 35 (quoting Compl. ¶ 97).)  The Opposition offers no response; it merely repeats this baseless and irrelevant conclusion four times.  (Opp. at 4, 12, 16, 29.)

underlying tort," thus "essentially inoculat[ing] all aiders and abettors from liability." (*Id.*) On the

contrary, DLA demonstrated, and the Opposition nowhere disputes, merely that Plaintiffs must plead facts

showing that the alleged injury here was proximately caused ***by DLA's conduct***. (Mot. at 36 (citing

cases).) That is because the Complaint admits the actual alleged injury here—the theft of money from the

Funds' accounts—was proximately caused by ICP and Priore, ***not*** DLA. (Compl. ¶¶ 8, 47, 62-63.) DLA

is not alleged to have been involved with the alleged theft or its concealment from the Funds. Thus, as in

one of Plaintiffs' own cases where the defendant was not "directly involved in the transfers" of cash "or in

the hiding of any information," the aiding and abetting claims fail. *Aaron*, 826 F. Supp. 2d at 519.[22]

## III. PLAINTIFFS' CAYMAN LAW CLAIM REMAINS INCURABLY DEFICIENT

### A. Plaintiffs Cannot Pursue Their Cayman Law Claim In A United States Court

Section 147 claims ***only*** may be brought in the Grand Court of the Cayman Islands because the

statute explicitly states that such claims only may be brought to "the Court," and "the Court" is defined to

mean "the Grand Court of the Cayman Islands." (Mot. at 37 (quoting Companies Law §§ 2(1), 147 (Mot.

Appendix, Exs. J, K)).) Plaintiffs do not dispute this, which compels dismissal of that claim. In addition,

the recency of the statute—it is undisputed that no Cayman court has yet substantively applied it (*see* Opp.

at 38 n.184)—and standard principles of comity likewise support dismissal. (Mot. at 37-38.)[23]

There is no need to stay this litigation pending a decision by the Grand Court of the Cayman

Islands on "the extraterritorial application of the statute." (Opp. at 35.) Section 147 is only a small piece

---

[22] To the extent Plaintiffs contend DLA's work somehow created the opportunity, or made it easier, for ICP and Priore to engage in misconduct, that too is insufficient. *Kirschner v. Bennett (In re Refco Secs. Litig.)*, 759 F. Supp. 2d 301, 337-38 (S.D.N.Y. 2010) (allegation that law firm "by its legal work, provided . . . the opportunity" for fraud did not plead proximate causation); *see also Agape*, 773 F. Supp. 2d at 325 ("[W]hile the Plaintiffs have alleged that BOA's . . . activities . . . made it easier for Cosmo to effectuate the scheme, these conventional banking transactions were not the proximate cause of the Plaintiffs' damages."). Additionally, Plaintiffs' attempt to conflate ***but for*** causation with the additional hurdle of ***proximate*** causation—*e.g.*, the margin payments would not have occurred "[b]ut for . . . DLA's wrongful conduct," and "[w]ithout DLA's participation, ICP and Priore could not have breached their fiduciary duties" (Opp. at 4-5)—also fails as a matter of law. *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 472 (S.D.N.Y. 2001) ("While the Ponzi scheme may only have been possible because of Bear Stearns' actions, or inaction, Bear Stearns' conduct was not a proximate cause of the Ponzi scheme."), *reconsideration denied*, 2001 WL 506908 (S.D.N.Y. May 14, 2001), *lv to appeal denied*, 2001 WL 935475 (S.D.N.Y. Aug. 16, 2001).

[23] None of Plaintiffs' eight cases involved a Chapter 15 representative attempting to sue a stranger to the debtor for alleged violations of foreign law. They thus have no bearing on whether Plaintiffs can sue DLA—which, it is undisputed, never interacted with the Funds, nor acted on their behalf—for violation of Section 147.

of this case, and the Motion presents several independent grounds for complete dismissal.

## B.    The Cayman Law Claim Fails As A Matter Of Law

*First*, DLA was not "knowingly" party to any fraud.  (Mot. at 39.)  The Opposition offers no real response to this point.  *Second*, DLA was not "party to the carrying on" of the Funds' business because DLA "did not represent" the Funds (Compl. ¶ 29), acted only for its clients Triaxx and ICP, and did not assist the alleged misconduct.  (Mot. at 39-40.)  Plaintiffs do not cite any contrary authority.  *Third*, the Funds' business is not adequately alleged to have been carried on with an intent to defraud or for any fraudulent purpose; rather, the Complaint admits that there was a non-fraudulent purpose for the margin payments (avoiding an Event of Default).  (*Id.* at 40.)  *Bank of India v. Morris*, [2005] BCC 739, did not "hold" that "a company's use of credit to conceal losses was done with a 'fraudulent purpose' . . . because the company knew there was no prospect of repaying the loans." (Opp. at 39.)  The defendant in that case expressly *admitted* those facts.  [2005] BCC 739, 746(20).[24]

## CONCLUSION

DLA respectfully requests that the Court dismiss Plaintiffs' Complaint.  Further, leave to amend should be denied because Plaintiffs do not explain what other facts they could plead if given leave.  *Landmark Ventures, Inc. v. Wave Sys. Corp.*, 513 F. App'x 109, 112 (2d Cir. 2013).

Dated:  March 27, 2014
         New York, New York

Respectfully submitted,
GIBSON, DUNN & CRUTCHER LLP
By:    /s/ Kevin S. Rosen
         Kevin S. Rosen (admitted *pro hac vice*)
         Matthew S. Kahn (MK-5426)
         *Attorneys for Defendant DLA Piper LLP (US)*

---

[24]  None of Plaintiffs' authorities supports their attempt to avoid *in pari delicto* as to the Section 147 claim.  (Opp. at 40.) *Picard v. Taylor (In re Park S. Sec., LLC)*, 326 B.R. 505 (Bankr. S.D.N.Y. 2005) and this Court's decision in *Tese-Milner v. Beeler (In re Hampton Hotel Investors, L.P.)*, 289 B.R. 563 (Bankr. S.D.N.Y. 2003) both address a completely different issue, namely, whether causes of action that arise only *postpetition* are barred.  326 B.R. at 513 (addressing fraudulent transfer claim); 289 B.R. at 580 (addressing claim arising out of alleged "unauthorized postpetition transfers").  And *Bilta (UK) Ltd (in liquidation) v. Nazir*, [2014] Chp 52, addresses only a claim against a corporate wrongdoer (a director) who sought to defeat the liquidators' claim by attributing to the company the unlawful conduct for which he himself was responsible; it was *not* about, in the court's words, "a claim against a third party" like DLA.  *Id.* at 111(F).  Further, *Bilta* did *not* "directly h[o]ld that *ex turpi causa* does not apply to a fraudulent-trading claims [sic]" *per se*, in all circumstances.  (Opp. at 40.)

20

## CERTIFICATE OF SERVICE

I, LING CHIOU, hereby certify, under penalty of perjury pursuant to 28 U.S.C. § 1746, that

on this 27th day of March, 2014, I served REPLY MEMORANDUM OF LAW IN FURTHER

SUPPORT OF DEFENDANT DLA PIPER LLP (US)'S MOTION TO DISMISS THE

COMPLAINT, by electronic transfer to the ECF system, upon the following counsel of record:

Joshua J. Bruckerhoff, Esq.
Reid Collins & Tsai LLP
1301 S. Capital of Texas Hwy
Building C, Suite 300
Austin, TX 78746

Ling Chiou