GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000
Kevin S. Rosen (admitted *pro hac vice*)
Matthew S. Kahn (MK-5426)

*Attorneys for Defendant DLA Piper LLP (US)*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ICP STRATEGIC CREDIT INCOME FUND LTD., *et al.*,<br><br>               Debtors in Foreign Proceedings. | Chapter 15 Case<br><br>Case No. 13-12116 (REG)<br><br>(Jointly Administered) |
| ICP STRATEGIC CREDIT INCOME MASTER FUND LTD., ICP STRATEGIC CREDIT INCOME FUND LTD., and HUGH DICKSON and STEPHEN AKERS, solely in their capacity as the Foreign Representatives and Joint Official Liquidators of ICP Strategic Credit Income Fund Ltd. and ICP Strategic Credit Income Master Fund Ltd.,<br><br>               Plaintiffs,<br>     -against-<br><br>DLA PIPER LLP (US),<br><br>               Defendant. | Adv. Pro. No. 14-01835 (REG)<br><br>(Procedurally Consolidated Under This Matter) |

## DEFENDANT DLA PIPER LLP (US)'S STATEMENT OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION TO DISMISS

New York, New York
June 2, 2014

Defendant DLA Piper LLP (US) ("DLA") hereby submits the enclosed authority, attached hereto as Exhibit A, which was decided by the Supreme Court of the State of New York, County of New York, on May 27, 2014, for the Court's consideration in connection with DLA's pending motion to dismiss (Dkt. No. 3).  DLA respectfully directs the Court's attention to pages 15 through 26 of the enclosed order, which contain a detailed discussion of *in pari delicto* issues directly relevant to DLA's pending motion to dismiss, including issues relating to choice of law, the internal affairs doctrine, and the exceptions to *in pari delicto*.

Dated: June 2, 2014
        New York, New York

                         GIBSON, DUNN & CRUTCHER LLP

                         By:    /s/ Kevin S. Rosen
                                Kevin S. Rosen (admitted *pro hac vice*)
                                Matthew S. Kahn (MK-5426)
                                *Attorneys for Defendant DLA Piper LLP (US)*

# EXHIBIT A

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT:      **MARCY S. FRIEDMAN**      PART __60__

*Justice*

| | |
|---|---|
| WALKER, TRUESDELL, ROTH & ASSOCIATES, INC., Trustee of Greenwich Sentry, L.P. Litigation Trust, | INDEX NO.    __600498/2009__ |
| Plaintiff, | |
| -against- | MOTION DATE _____ |
| GLOBEOP FINANCIAL SERVICES LLC, CITCO FUND SERVICES (EUROPE) BV, CITCO (CANADA) INC., and PRICEWATERHOUSECOOPERS LLP, | |
| Defendants. | MOTION SEQ. NO. __005, 006__ |

The following papers, numbered 1 to _____ were read on these motions to dismiss.

| | |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | No (s). _____ |
| Answering Affidavits — Exhibits _____ | No (s). _____ |
| Replying Affidavits _____ | No (s). _____ |

**Cross-Motion:** ☒ **Yes** ☐ **No**

    Upon the foregoing papers, it is ORDERED that defendants' motions to dismiss are decided in accordance with the attached decision/order, dated May 27, 2014.

*MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):*

Dated: __May 27, 2014__      _____, J.S.C.

**MARCY S. FRIEDMAN, J.S.C.**

1. Check one: ................................ ☒ CASE DISPOSED ☐ NON-FINAL DISPOSITION
2. Check as appropriate:.....Motion is: ☒ GRANTED ☐ DENIED ☐ GRANTED IN PART ☐ OTHER
3. Check if appropriate:.................... ☐ SETTLE ORDER ☐ SUBMIT ORDER
     ☐ DO NOT POST ☐ FIDUCIARY APPOINTMENT ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK - PART 60

PRESENT: HON. MARCY S. FRIEDMAN, J.S.C.
-------------------------------------------------------------------------x
WALKER, TRUESDELL, ROTH & ASSOCIATES,
INC., Trustee of Greenwich Sentry, L.P. Litigation Trust,

                Plaintiff,

          -against-                           Index No.
                                            600469/09

GLOBEOP FINANCIAL SERVICES LLC,
CITCO FUND SERVICES (EUROPE) B.V.,
CITCO (CANADA) INC.,
PRICEWATERHOUSECOOPERS LLP and
PRICEWATERHOUSECOOPERS
ACCOUNTANTS, N.V.,

                Defendants,
-------------------------------------------------------------------------x
WALKER, TRUESDELL, ROTH & ASSOCIATES,
INC., Trustee of Greenwich Sentry Partners, L.P.
Litigation Trust,

                Plaintiff,

          -against-                           Index No.
                                            600498/09

GLOBEOP FINANCIAL SERVICES LLC,
CITCO FUND SERVICES (EUROPE) B.V.,
CITCO (CANADA) INC., and
PRICEWATERHOUSECOOPERS LLP,

                Defendants.
-------------------------------------------------------------------------x

This action arises out of the Bernard Madoff Ponzi scheme. Plaintiff Walker, Truesdell,

Roth & Associates, Inc., the Litigation Trustee (Trustee) of investment funds Greenwich Sentry,

L.P. and Greenwich Sentry Partners, L.P. (Greenwich Sentry Funds or Funds), sues the

administrators of the Funds, defendants Citco Fund Services (Europe) BV and Citco (Canada)

Inc. (Citco Administrators), and the Funds' auditors, PricewaterhouseCoopers Accountants N.V.

(PwC Netherlands) and PricewaterhouseCoopers LLP (PwC Canada) (PwC Auditors).

Defendants move to dismiss the Trustee's Amended Complaints pursuant to CPLR 3211 (a) (1)

and (7). Plaintiff Trustee cross-moves to compel the deposition of defendant PwC Netherlands'

expert.[1]

Background

The Funds are private investment limited partnerships which commenced operations in

1993 and operated as "feeder" funds, investing over $300 million, substantially all of their assets,

with Bernard Madoff's firm, Bernard L. Madoff Investment Securities, LLC (BMIS). They are

affiliated with the Fairfield Greenwich Group of investment funds (Fairfield Greenwich Group).

(Trustee's Am. Compl. ¶¶ 2, 17.)[2] The Greenwich Sentry Funds' brokerage accounts were

maintained at BMIS, which also served as the custodian of the Funds' assets. (Offering

Memorandum, Aff. of Dyanne Feinberg [Feinberg Aff.], Exs. C, D at 2.) Affiliates of the

Fairfield Greenwich Group served as the Funds' general partners, which managed the Funds. An

affiliate of the Fairfield Greenwich Group provided the Funds with administrative and back

office services. The Funds also had separate administrators and auditors. The Citco

---

[1] Motion sequence numbers 004, 005 and 006 for Index No. 600469/09 and motion sequence numbers 005 and 006 for Index No. 600498/09 are consolidated for disposition and are disposed of in accordance with this decision and order.

[2] Citations are to the Trustee's Amended Complaint for Greenwich Sentry, L.P. The Amended Complaint for Greenwich Sentry Partners, L.P. is substantially similar.

2

Administrators served as the Funds' administrators commencing in 2006. (Trustee's Am. Compl., ¶¶ 12-13.)[3] PwC Netherlands served as the outside auditor for Greenwich Sentry, L.P. for the year ending December 31, 2005. (Id., ¶ 15.) PwC Canada served as both Funds' outside auditor for the years ending December 31, 2006 and 2007. (Id., ¶ 14.)

These actions were initially commenced as derivative actions on behalf of the Funds. Limited partner, David Ferber, commenced the action on behalf of Greenwich Sentry, L.P., and limited partner, Frank Pierce, commenced the action on behalf of Greenwich Sentry Partners, L.P. The Ferber and Pierce complaints named as "Fund Defendants" the affiliates of the Fairfield Greenwich Group that managed the Greenwich Sentry Funds as well as the individual directors of the affiliates. These complaints included the Citco Administrators among the "Fund Defendants." (Ferber Am. Compl., ¶ 1, Feinberg Aff., Ex. H; Pierce Am. Compl., ¶ 1, Feinberg Aff., Ex. I.) As discussed more fully below, the complaints alleged that the Fund Defendants breached their fiduciary duties by failing to conduct adequate due diligence, allowing Madoff and BMIS to go unchecked, and collecting hundreds of millions of dollars in fees on fictitious assets. (Ferber Am. Compl., ¶¶ 7-8; Pierce Am. Compl., ¶¶ 7-8.) The complaints pleaded causes of action against the Fund Defendants for "grossly negligent, willful and reckless breach of fiduciary duties," aiding and abetting such breach, negligent misrepresentation, unjust enrichment, and an accounting. (Id., ¶¶ 168-183; 204-213.) In addition, the complaints named the PwC Auditors as defendants, and pleaded separate causes of action against them for professional negligence, breach of contract, and negligent misrepresentation. (Id., ¶¶ 184-203.)

---

[3]GlobeOp Financial Services LLC (GlobeOp) was the Fund's administrator from 2003 through August 2006. Plaintiff reached a settlement with GlobeOp which was also named as a defendant in these actions. (Trustee's Am. Compl., ¶ 11[a].)

The complaints named the Greenwich Sentry Funds as nominal defendants. (Ferber Am. Compl., ¶ 14; Pierce Am. Compl., ¶ 15.)

The derivative complaints were filed in February 2009. In March 2009, the actions were removed to federal court for consolidation with a related action, Anwar v Fairfield Greenwich Ltd. (No. 09-Civ-118 [SD NY].) The actions were remanded by order dated December 23, 2009. By order dated March 22, 2010, the Court (Fried, J.) stayed discovery pending oral argument of a motion to dismiss in Anwar. (Doc. No. 57.)[4] Defendants subsequently served a motion seeking a stay of these actions pending final decision of the motion to dismiss the Anwar action. By order dated July 22, 2010, this Court denied the motion for a stay. (Doc. No. 87.) By preliminary conference order dated October 28, 2010, the Court directed coordination of discovery in these actions with discovery in the Anwar action. (Doc. No. 110.) Prior to entry of the preliminary conference order, however, both PWC defendants had sought leave to serve motions to dismiss the actions based on the forum selection clauses, and for a stay pending the motions to dismiss. (See PWC letters dated Aug. 2, 2010, Doc. Nos. 93, 95-97.)

The Greenwich Sentry Funds filed bankruptcy petitions in November 2010. (Matter of Greenwich Sentry, L.P. and Greenwich Sentry Partners, L.P., Case No. 10-16229 [BRL] [US Bankr Ct SD NY].) By order dated December 1, 2010, this Court stayed the derivative actions based on an interim stay entered by the Bankruptcy Court on November 23, 2010. (Doc. No. 120.) By order dated December 22, 2011, the Bankruptcy Court confirmed the Funds' Chapter 11 reorganization plan, and appointed plaintiff as Trustee of the Funds' Litigation Trust.

---

[4] Citations and dates are to the Ferber Action (600469/09). The dates and orders entered in the Pierce Action (600498/09) are substantially similar.

4

(Trustee's Am. Compl., ¶ 10; Dec. 22, 2011 Order, Findings, ¶ D [viii].) This order also enjoined all holders of claims against the debtors arising prior to the effective date from commencing or continuing any lawsuits pending as of the effective date. (Id., ¶ 15 [a].) By Stipulation and Agreed Order entered on January 26, 2012, the Bankruptcy Court directed Ferber and Pierce, who had sought leave to bring adversary proceedings on behalf of the debtors in the bankruptcy proceeding, to "remove and dismiss with prejudice any and all individuals or entities constituting Management as defendants in either of the Derivative Actions." (Jan. 26, 2012 Order, ¶ 1, amending Dec. 22, 2011 Order, ¶ 5.) By order dated April 10, 2012, this Court (Fried, J.) lifted the stay of these actions and authorized the Trustee to file amended complaints. (Doc. No. 142.) The Litigation Trustee was substituted for the derivative plaintiffs and, on May 11, 2012, filed the Amended Complaints that are the subject of these motions to dismiss. (Doc. No. 151.)

The Greenwich Sentry Funds assigned their claims against the Fairfield Greenwich Group entities to the BMIS Trustee. By order dated July 7, 2011, the Court in the Greenwich Sentry Funds' bankruptcy proceeding approved a settlement of a clawback claim brought by the BMIS Trustee against the Funds. In this settlement, the Funds agreed to judgment against them for approximately $200 million for amounts withdrawn by the Funds from BMIS before the latter's bankruptcy. They also agreed to assign to the BMIS Trustee all of the Funds' claims against their former general partner, investment managers, and investment advisors, including but not limited to entities denominated the Fairfield Greenwich Group, and their individual directors. (Settlement Agreement, Feinberg Aff., Ex. A to Ex. E at 4.)

The Trustee's Amended Complaints plead causes of action solely against the Citco

Administrators and PwC Auditors. They do not plead causes of action against the Fairfield Greenwich Group defendants or their individual directors and, indeed, affirmatively allege that "[t]he fund [defined as the Greenwich Sentry Funds] was not a culpable participant in [Madoff's] Ponzi scheme, and did not know of the scheme prior to its December 11, 2008 disclosure." (Trustee's Am. Compl., ¶¶ 1, 4.)

In the Amended Complaints, plaintiff Trustee alleges that the Citco Administrators breached their fiduciary duties to the Funds in that they "failed to establish and implement an adequate and functioning system of internal financial and accounting controls to ensure the existence of and to protect the Fund's assets"; "failed to accurately perform, or to supervise others who performed, due diligence and continued risk monitoring of the Fund's manager and portfolio"; and "enriched themselves at the expense of the Fund by collecting fees based upon the Fund's artificially inflated net asset value." (Trustee's Am. Compl., ¶ 121.) The Amended Complaints further allege that the Citco Administrators are liable to the Funds for negligent misrepresentation and common law fraud, based on alleged misrepresentations to the Funds, including material overstatements as to the Funds' net asset value. (Id., ¶¶ 131, 157.) In addition, the Amended Complaints plead gross negligence and breach of contract claims against the Citco Administrators (id., Sixth and Eighth causes of action), and an unjust enrichment claim based on the Citco Administrators' receipt of fees. (Id., Seventeenth cause of action.)

As to the PwC Auditors, the Trustee pleads that they failed to conduct their audits in accordance with generally accepted auditing standards (GAAS), issued materially false and misleading statements to the Funds that the audits were conducted in accordance with GAAS, and improperly issued "clean" or unqualified opinions with respect to the Funds' financial

6

statements. (Id., ¶¶ 163, 184.) Based on these allegations, the Amended Complaints plead claims against the PwC Auditors for common law fraud, negligent misrepresentation, professional negligence, breach of contract, and aiding and abetting the Citco Administrators' breach of fiduciary duties. (Id., Eleventh-Fifteenth causes of action.)

The Amended Complaints also plead a claim against both the Citco Administrators and the PwC Auditors for contribution and indemnification based on the Greenwich Sentry Funds' settlement with BMIS. (Id., Twentieth cause of action.)

The PwC Auditors move to dismiss the Trustee's Amended Complaints based on forum selection clauses in their contracts with the Funds. The PwC and Citco defendants both move to dismiss the Amended Complaints in their entirety based on the in pari delicto doctrine. In addition, defendants assert specific objections to the Trustee's pleading of its causes of the action.

Discussion

It is well settled that on a motion to dismiss pursuant to CPLR 3211(a)(7), "the pleading is to be afforded a liberal construction (see, CPLR 3026). [The court must] accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." (Leon v Martinez, 84 NY2d 83, 87-88 [1994]. See 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144 [2002].) However, "the court is not required to accept factual allegations that are plainly contradicted by the documentary evidence or legal conclusions that are unsupportable based upon the undisputed facts." (Robinson v Robinson, 303 AD2d 234, 235 [1st Dept 2003]; see also Water St. Leasehold LLC v Deloitte & Touche LLP, 19 AD3d 183 [1st Dept 2005], lv

7

denied 6 NY3d 706 [2006].)  When documentary evidence under CPLR 3211(a)(1) is considered, "a dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law." (Leon v Martinez, 84 NY2d at 88.)

Forum Selection Clauses

As a threshold matter, the PwC Auditor defendants move to dismiss based on forum selection clauses in their contracts for services to the Greenwich Sentry Funds.  The forum selection clause in the PwC Netherlands contract provided: "Unless the parties expressly agree otherwise in writing, all disputes between the [Funds] and [PwC Netherlands] relating to this Contract will be referred to the competent District Court of Amsterdam." (Marshall Aff., Ex. A, § 23.2.)  This contract also contained a choice of law clause that provided: "All Contracts between the [Funds] and [PwC Netherlands] are governed by the laws of the Netherlands." (Id., § 23.1.)  The PwC Canada Contract provided: "The Agreement shall be governed and construed in accordance with the laws of the Province of Ontario and shall be deemed in all respects to be an Ontario contract.  The parties hereby agree to the jurisdiction of the courts of the Province of Ontario with respect to all matters arising under or by virtue of this Agreement." (Duffy Aff., Ex. A, Appendix §35; Ex. B, Appendix § 34.)

It is "the well-settled policy of the courts of this State to enforce forum selection clauses." (Sydney Attractions Group PTY Ltd. v Schulman, 74 AD3d 476, 476 [1st Dept 2010]; Sterling Natl. Bank v Eastern Shipping Worldwide, Inc., 35 AD3d 222, 222 [1st Dept 2006].)  "Forum selection clauses are enforced because they provide certainty and predictability in the resolution of disputes. . . ." (Brooke Group v JCH Syndicate 488, 87 NY2d 530, 534 [1996].)  They "are

prima facie valid and enforceable unless shown by the resisting party to be unreasonable." (Id.)

Forum selection clauses "are not to be set aside unless a party demonstrates that the enforcement of such would be unreasonable and unjust or that the clause is invalid because of fraud or overreaching, such that a trial in the contractual forum would be so gravely difficult and inconvenient that the challenging party would, for all practical purposes, be deprived of his or her day in court." (Sterling Natl. Bank, 35 AD3d at 222 [internal quotation marks and citation omitted].) Forum selection clauses will also be set aside if they violate public policy. (Pratik Apparels, Ltd. v Shintex Apparel Group, Inc., 96 AD3d 922, 923 [2d Dept 2012]; Premium Risk Group v Legion Ins. Co., 294 AD2d 345, 346 [2d Dept 2002].)

Absent a showing that enforcement of a forum selection clause would be unreasonable, the clause will be enforced if it contains "mandatory language binding the parties to a particular forum" (Brooke Group, 87 NY2d at 534) or, put another way, if "the contractual language . . . provides unambiguously that any disputes are to be decided" in the specified forum. (Boss v American Express Fin. Advisors, Inc., 6 NY3d 242, 246 [2006].) New York Courts distinguish between mandatory forum selection clauses, which provide that the specified forum is the exclusive or sole forum in which the matter may be heard, and permissive clauses, which confer jurisdiction on the specified forum to hear the matter but do not limit the parties' rights to sue in another forum having jurisdiction over the defendants. (See e.g. Orix Credit Alliance, Inc. v Mid-South Materials Corp., 816 F Supp 230 [SD NY 1993] [summarizing New York law on the distinction between permissive and mandatory clauses].) The Courts have repeatedly found forum selection clauses mandatory if they provide that a specified forum "shall" hear a matter or that the forum is "exclusive." (See e.g. Micro Balanced Prods. Corp. v Hlavin Indus. Ltd., 238

AD2d 284, 284-285 [1st Dept 1997] [enforcing clause that "[t]he courts of Tel-Aviv shall have jurisdiction over any matter arising from or concerning this agreement," and noting that "language such as that employed by the parties ["shall have jurisdiction"] has generally been construed as mandatory"]; Erie Ins. Co. of New York v AE Design, Inc., 104 AD3d 1319, 1320 [4th Dept 2013], lv denied 12 NY3d 702 [2013] [enforcing clause that "[a]ny litigation arising in any way from this Agreement shall be brought" in the specified court, although not expressly characterizing such clause as "mandatory"]; Investools Inc. v Waltz, 2006 WL 4682091 [Sup Ct, NY County 2006] [reviewing authorities and concluding that "[t]ypically, a clear indication of intent regarding inclusion and exclusion are words such as 'shall' or 'exclusive jurisdiction'"]; Hur v Carvel Corp., 2001 WL 1568413, * 2 [Sup Ct, Nassau County 2001] [enforcing clause that any litigation arising out of the agreement "will be instituted exclusively in" specified forum].)

In contrast, clauses which provide that a party agrees to, or will, submit to the jurisdiction of a forum are considered permissive. (See e.g. Reliance Ins. Co. v Six Star, Inc., 155 F Supp 2d 49, 53, 58 [SD NY 2001] [holding that clause that insured "will submit to the jurisdiction of the State of New York and will comply with all the requirements necessary to give such court jurisdiction" was permissive, because it lacked "a clear indication of exclusivity"]; Orix Credit Alliance, Inc., 816 F Supp at 231, 233 [holding that clause, which provided that "the undersigned do[es] hereby agree to the venue and jurisdiction of any court in the State and County of New York regarding any matter arising hereunder," was "permissive"]; Heyco, Inc. v Heyman, 636 F Supp 1545, 1547-1548 [SD NY 1986] [holding that clause, which provided that "[t]he parties expressly hereby submit to the personal jurisdiction of the courts . . . of New Jersey for resolution of all disputes arising under this Agreement," empowered the New Jersey courts to

adjudicate the litigation but did not indicate that New Jersey was "the exclusive forum"].)

Applying these principles, this court holds that the forum selection clause in the PwC Netherlands contract is mandatory, but that the clause in the PwC Canada contract is not. The PwC Netherlands contract provided that "[u]nless the parties expressly agree otherwise in writing, all disputes . . . relating to this Contract will be referred" to a competent Amsterdam court. It is undisputed that the parties did not agree to another forum. Thus, this contract imposes an unequivocal mandate that all disputes be heard by an Amsterdam court. In contrast, the PwC Canada contract provided that "[t]he parties hereby agree to the jurisdiction of the courts of the Province of Ontario with respect to all matters arising under or by virtue of this Agreement." It does not contain any language that expresses an intention that the Canada courts shall be the exclusive courts to hear disputes under the Agreement and, on the authority cited above, merely confers non-exclusive jurisdiction on the courts of Canada.

Boss v American Express Fin. Advisors, Inc. (6 NY3d 242, supra) is not to the contrary. The forum selection clause at issue provided: "This Agreement is a Minnesota contract, governed by Minnesota law. All of the payments you [plaintiff financial advisors] make to [defendant for overhead expenses] are payable in Hennepin County, Minnesota. You expressly waive any privileges contrary to this provision. You agree to the jurisdiction of [the] State of Minnesota courts for determining any controversy in connection with this Agreement." In rejecting plaintiffs' claim that the clause was permissive, the Court reasoned that "[t]he contractual language here provides unambiguously that any disputes are to be decided in the courts of Minnesota and that Minnesota law should govern. The parties thus waived any privilege to have their claims heard elsewhere." (Id. at 245-246.) The Court also noted that all of the relevant

11

events regarding the contract took place in Minnesota, and "plaintiffs' reasonable expectations were that all litigation would take place in Minnesota, not New York." (Id. at 247.)

Unlike the PwC Canada forum selection clause, the clause in Boss thus involved not only an agreement to the jurisdiction of a specified forum, but an express "waiver" by plaintiffs of the "privilege to have their claims heard elsewhere." (Id. at 246.) (See Barden Solutions, Inc. v Bassetti, 38 AD3d 1199, 1199 [4th Dept 2007] [distinguishing Boss on this ground]; Investools Inc., 2006 WL 4682091, supra [same].)[5]

The court further holds that the PwC Netherlands' forum selection clause is otherwise enforceable. Plaintiff makes no showing that enforcement of the clause would be unreasonable or unjust. Plaintiff does not argue that the clause was the result of fraud or overreaching or violates public policy. Although plaintiff argues that litigation of the claims in different forums may result in inconsistent verdicts, this argument ignores that there is already related litigation pending against PwC Netherlands in Amsterdam. (See Ds.' Memo. In Support at 4.) The inconvenience of litigating in these two forums is not, without more, a bar to enforcement of the forum selection clause. (See Matter of Refco Inc., Secs. Litig., 2009 WL 5548666, * 13 [SD NY Nov. 16, 2009] [internal quotation marks and citation omitted].) Plaintiff makes no showing that any limitations on recovery imposed by Netherlands law would effectively deprive it of a day in

---

[5] Koob v IDS Fin. Servs., Inc., 213 AD2d 26 [1st Dept 1995]), a case involving one of the same defendants as Boss, enforced a forum selection clause which provided that the plaintiff "consents 'to the jurisdiction of State of Minnesota courts for determining any controversy in connection with this agreement.'" (Id. at 33.) In enforcing the contract, the Court cited the facts that the contract not only provided that it was governed by Minnesota law, but was entered into and performed entirely in Minnesota. The Court concluded: "This Court will not require a more explicit expression of consent to the jurisdiction of the courts of a particular State, especially where the law of the designated forum is exclusively applicable to the controversy." (Id. at 33-34.) PwC Canada's reliance on Koob is unavailing, as it was decided before Boss, which emphasized the significance of the plaintiffs' waiver in enforcing as mandatory a forum selection clause providing for consent to jurisdiction.

court. Plaintiff also cites no authority in support of its contention that the unavailability of pre-trial discovery in the Netherlands bars enforcement of the forum selection clause.

The court is also unpersuaded by plaintiff's contention that PwC Netherlands waived enforcement of the clause by participating in discovery in this action. As review of the court file shows, although the derivative complaints were filed in February 2009, these actions were removed to federal court for most of 2009, and then stayed by this Court for most of the period through July 2010. (See supra at 4.) Once the stay was vacated, and prior to the Court's issuance of the October 2010 preliminary conference order directing coordination of discovery with Anwar, defendant PwC Netherlands (along with PwC Canada) sought leave to move to dismiss the actions, citing the forum selection clause. (Id.) As plaintiff acknowledged at the oral argument of the motions to dismiss, PwC Netherlands did not notice depositions and participated in the coordinated discovery to a lesser extent than did PwC Canada. (Oral Argument Transcript at 50.) Moreover, after plaintiff filed its Amended Complaints on May 11, 2012, PwC Netherlands (and PwC Canada) expeditiously served these motions to dismiss on or about July 9, 2012.

PwC Netherlands thus not only took appropriate steps to preserve its objections to discovery, but also moved to dismiss at the first available opportunity. This case is therefore not one in which a defendant fails to assert a bar to the action in its answer or by timely motion and elects instead to conduct discovery and to fully participate in the litigation – acts inconsistent with its later claim that litigation in the forum was not appropriate. (Compare e.g. Flores v Lower East Side Serv. Ctr., Inc., 4 NY3d 363, 371-372 [2005], rearg denied 5 NY3d 746 [2005] [waiver of arbitration clause]; De Sapio v Kohlmeyer, 35 NY2d 402, 406 [1974] [same]. See

13

also Lischinskaya v Carnival Corp., 56 AD3d 116, 119 [2d Dept 2008], lv denied 12 NY3d 716 [2009] [defendant's participation in the litigation was not a bar to dismissal of action based on forum selection clause, where answer asserted defense based on the clause, and defendant "was not under any obligation to move on it more quickly than it did"].)

The court further rejects plaintiff's contention that it is not bound by the forum selection clause in the contract between the Fund and PwC Netherlands because it was a non-signatory. Plaintiff seeks to enforce the contract and stands in the shoes of the Fund for that purpose. It is therefore bound by all of its provisions, including the forum selection clause. (See e.g. Matter of Refco, Inc. Secs. Litig., 2008 WL 2185676, * 4-5 [SD NY May 21, 2008] [holding that litigation trustee, as "successor in interest" to debtors, is bound by arbitration clause in engagement letters between debtors and tax services provider]; Ferber SEP IRA v GlobeOp Fin. Servs. LLC, 2009 NY Misc LEXIS 5158, * 3-4 [Sup Ct, NY County, Nov. 9, 2009 [holding that as derivative plaintiff asserted claims on behalf of Fund, it was bound by arbitration clause in contract between Fund and administrator, although it was not a signatory to the contract]; see generally Freeford Ltd. v Pendleton, 53 AD3d 32, 38-39 [1st Dept 2008], lv denied 12 NY3d 702 [2009] [discussing circumstances in which forum selection clauses may be enforced by non parties, as where they are "closely related" to a signatory].)

The court also rejects plaintiff's contention that the forum selection clause applies only to the contract claim, and not to the tort claims, pleaded in the Amended Complaints. The clause at issue provides for an Amsterdam court to hear all disputes "relating to this Contract." Plaintiff alleges that PwC Netherlands failed to conduct its audits in conformity with GAAS, as required by its contract, and committed related torts including professional malpractice and fraud, based

14

on its misrepresentations as to its compliance with the contract. The alleged torts are clearly related to the contract and fall within the scope of the forum selection clause. (See Ferber SEP IRA, 2009 NY Misc LEXIS 5158, at * 4-5; Triple Z Postal Servs., Inc. v United Parcel Serv., Inc., 2006 WL 3393259 [Sup Ct NY County Nov. 24, 2006] [and authorities cited therein]; Weingrad v Telepathy, Inc., 2005 WL 2990645, *5 [SD NY Nov. 7, 2005 [surveying authorities applying contract-based forum selection clause to related tort claims]; compare First Ins. Funding Corp. v Kass, 82 AD3d 642, 643 [1st Dept 2011] [holding that forum selection clause was not applicable to tort claims dependent on and involving same operative facts as breach of contract claim, where contract expressly limited its application "to matters involving 'the validity and construction'" of the contract].)

The court has considered plaintiff's remaining objections to enforcement of the forum selection clause, and finds them to be without merit. With the exception of the 20th cause of action for contribution and indemnification, which does not plead a claim under or related to the contract, the causes of action in the Amended Complaints against PwC Netherlands will be dismissed.

Plaintiff's cross-motion for a deposition of defendant's expert on Netherlands law will also be denied. Plaintiff does not produce its own expert on Netherlands law and, as held above, does not claim, or make any showing, that limitations on recovery under such law would effectively deprive plaintiff of its day in court. There is accordingly no basis for affording plaintiff expert discovery prior to determination of PwC Netherlands' motion to dismiss.

In Pari Delicto

The PwC and the Citco defendants both seek dismissal of the action under the in pari

15

delicto doctrine. As explained by the Court of Appeals in <u>Kirschner v KPMG LLP</u> (15 NY3d 446 [2010]), this doctrine "mandates that the courts will not intercede to resolve a dispute between two wrongdoers." (<u>Id.</u> at 464.) Under the doctrine, the acts of a corporation's authorized agents, such as its officers, are imputed to the corporation "even if [the] particular acts were unauthorized." (<u>Id.</u> at 465.) An "adverse interest" exception to imputation exists where the agent has "<u>totally abandoned</u> his principal's interests and [is] acting <u>entirely</u> for his own or another's purposes. (<u>Id.</u> at 466 [emphasis in original].) This "most narrow of exceptions" is reserved for those cases in which "the insider's misconduct benefits only himself or a third party; i.e., where the fraud is committed <u>against</u> a corporation rather than on its behalf." (<u>Id.</u> at 466-467 [emphasis in original].)

Kirschner answered certified questions from the Second Circuit and the Delaware Supreme Court in cases brought by a litigation trustee and derivative plaintiff, respectively, against a corporation's outside auditors (and other third parties), alleging that they had assisted the corporation's insiders in committing fraud or negligently failed to detect it. The <u>Kirschner</u> Court declined to expand the adverse interest exception or to loosen imputation principles. In particular, the Court expressly rejected the approach of the New Jersey and Pennsylvania Courts which recognize "carve-outs from traditional agency law in cases of corporate fraud so as to deny the in pari delicto defense to negligent or otherwise culpable outside auditors (New Jersey) and collusive outside professionals (Pennsylvania)." (<u>Id.</u> at 471.) In adhering to prior precedent, the Court emphasized that "the principle that a wrongdoer should not profit from his own misconduct is so strong in New York that . . . the defense applies even in difficult cases and should not be '<u>weakened by exceptions</u>.'" (<u>Id.</u> at 464 [emphasis in original] [internal citation

16

omitted].)

In opposing the application of the New York in pari delicto doctrine, plaintiff argues that the claims in these actions involve the internal affairs of the Greenwich Sentry Funds, which are Delaware partnerships, and that under Delaware law, which follows the New Jersey carve-out, the claims against the PwC defendants are not barred by the in pari delicto doctrine. (See P.'s Memo. In Opp. at 15-16.) This contention is without merit. The internal affairs doctrine "governs the choice of law determinations involving matters peculiar to corporations, that is, those activities concerning the relationships inter se of the corporation, its directors, officers and shareholders." (American Intl. Group, Inc. v Greenberg, 965 A2d 763, 817 [Del Ch 2009] [internal quotation marks and citations omitted] [emphasis in original]; question certified 998 AD2d 280 [Del 2010]; cert question answered Kirschner v KPMG LLP,15 NY3d 446, supra; affd sub nom Teachers' Ret. Sys. of La. v PricewaterhouseCoopers LLP, 11 AD3d 228 [Del 2011].) The doctrine "does not apply where the rights of third parties external to the corporation are at issue, e.g., contracts and torts" involving third parties. (QVT Fund LP v Eurohypo Cap. Funding LLC I, 2011 Del Ch Lexis 97, * 24 [2011] [internal quotation marks and citations omitted].) In cases involving claims against third parties, choice of law issues are determined by applying traditional choice of law rules. (American Intl. Group, Inc., 965 A2d at 817-818; QVT Fund LP, 2011 Del Ch Lexis 97 at * 24.) Plaintiff does not, however, claim, much less undertake any analysis to show, that Delaware law applies under a traditional interest analysis. The court therefore holds that these actions are governed by the in pari delicto doctrine as interpreted by New York Courts.

Plaintiff also argues that the in pari delicto doctrine fails under various exceptions. First,

plaintiff contends that the adverse interest exception applies because the Funds' general partner received "incentive" compensation based on the Funds' reported performance. (P.'s Memo. In Opp. at 16.) The Funds' general partner's receipt of compensation does not satisfy the requirement of the adverse interest exception that the corporate officer or agent have acted solely for its own benefit. Where the corporate wrongdoer's conduct "enables the business to survive – to attract investors and customers and raise funds for corporate purposes – this [the adverse interest] test is not met." (Kirschner, 15 NY3d at 468; Concord Cap. Mgt., LLC v Bank of Am., N.A., 102 AD3d 406 [1st Dept 2013].) Here, the complaints initially pleaded not only that the Funds' officers or agents received "hefty management, incentive, and administrator fees," but also that they "allowed Madoff and BMIS to go unchecked, while issuing false reports to investors presenting nonexistent, or, at the very least, highly inflated, profits. . . ." (Ferber Am. Compl., ¶ 7; Pierce Am. Compl., ¶ 7.) This pleading of conduct that enabled the Funds, at least for a time, to survive and attract investors is thus inconsistent with the adverse interest exception.

Plaintiff also asserts that an exception to the doctrine exists on the ground that a managing partner of a Citco affiliate, Brian Francouer, was at one time a director of the Funds' general partner. (P.'s Memo. In Opp. at 16-17.) In support of this exception, plaintiff cites authority for the unexceptional proposition that the in pari delicto doctrine bars litigation by a corporation against third parties and not against the officers or agents whose wrongdoing has been imputed to the corporation. (See Picard v Madoff, 458 BR 87, 123-124 [Bankr SD NY 2011], lv denied 464 BR 578 [SD NY Dec. 22, 2011].) Plaintiff's bare allegation as to Francouer's position with the Funds' general partner is, however, an obviously insufficient basis on which to attribute insider status to any of the Citgo defendants, and thereby to transform the

18

claims pleaded against third parties into claims against the Funds' insiders.[6]

Plaintiff further seeks relief from the doctrine on the ground that it is an "innocent successor." In support of this contention, plaintiff cites cases that decline to apply the doctrine to receivers of corporations to which an insider's conduct has been imputed. (P.'s Memo. In Opp. at 17; see e.g. Jones v Wells Fargo Bank, 666 F3d 955 [5th Cir 2012] [receiver appointed in SEC enforcement action]; FDIC v O'Melveney & Myers, 61 F3d 17 [9th Cir 1995].)

Unlike receivers, bankruptcy trustees are subject to Bankruptcy Code section 541, which prevents such trustees from bringing any suit that the corporation could not have brought pre-petition. The Courts have therefore repeatedly applied the in pari delicto doctrine to bankruptcy trustees where the corporation itself would have been barred from suing based on the doctrine. As discussed above, Kirschner (15 NY3d 446, supra) declined to expand the doctrine in a manner that would permit claims of a litigation trustee against third party auditors and others to proceed. It does not appear from the opinion that the Court was presented with an issue as to whether such trustees should be exempt from the doctrine based on their status. Courts which have squarely addressed the issue have, however, reasoned that "[b]ecause a bankruptcy trustee stands in the shoes of the bankrupt corporation, in pari delicto prevents the trustee from recovering in tort if the corporation, acting through authorized employees in their official capacities, participated in the tort." (Matter of MF Global Holdings Ltd. Inv. Litig. [Deangelis v

---

[6]Plaintiff also invokes the "innocent insider" exception to the in pari delicto doctrine based on Francouer's status as a director of the Funds' general partner. This exception provides that the doctrine will not be applied where there was a wrongdoing corporate insider but there was also an insider who had no knowledge of the fraud and who had the will and ability to stop it had it been brought to his or her attention. (See Symbol Technologies, Inc. v Deloitte & Touche, LLP, 69 AD3d 191, 197 n 2 [2d Dept 2009].) The insider exception has not been adopted in New York. (Id.) In any event, plaintiff fails to plead any facts regarding Francouer's acts that would support the exception.

Corzine], 2014 WL 667481 [SD NY 2014] [applying the New York in pari delicto doctrine to claim against auditor brought by trustee appointed under Securities Investor Protection Act]; Buechner v Avery, 38 AD3d 443, 444 [1st Dept 2007] [pre-Kirschner case holding that trustee was precluded from bringing tort claims by in pari delicto doctrine, based on cooperation of management of bankrupt debtor with third parties]; see Williamson v PricewaterhouseCoopers, LLP, 2007 WL 5527944 [Sup Ct, NY County Nov. 7, 2007] [noting, upon survey of federal and state authorities, that while courts have generally applied the in pari delicto doctrine to prevent a bankruptcy trustee from asserting a claim against a third party where management participated with the third party in the wrongful acts, courts have often relieved receivers or non-bankruptcy trustees, who are not subject to section 541, from the in pari delicto doctrine]; Peterson v McGladrey & Pullen, LLP, 676 F3d 594, 598-599 [7th Cir 2012] [holding, consistent with "every other court of appeals that has addressed this subject . . . that a person sued by a trustee in bankruptcy may assert the defense of in pari delicto, if the jurisdiction whose law creates the claim permits such a defense outside of bankruptcy"].)

On the above authority, the court holds that plaintiff, as the Greenwich Sentry Funds' bankruptcy trustee, stands in the Funds' shoes, and is subject to a defense based on the in pari delicto doctrine if the Funds would have been subject to the defense. As Kirschner observed, "in pari delicto may be resolved on the pleadings in a state court action in an appropriate case. (15 NY3d at 459, n 3; Donovan v Rothman, 302 AD2d 238, 239 [1st Dept 2003], lv dismissed 100 NY2d 640.) The remaining issue is therefore whether defendants have established as a matter of law, on the record of these motions to dismiss, that the in pari delicto doctrine is a defense to plaintiff's claims against them.

It is undisputed that the derivative complaints in these actions pleaded extensive wrongdoing on the part of the Funds' management. More particularly, the complaints pleaded that the Fund Defendants, which included the various Fairfield Greenwich Group affiliates that managed the Funds, their individual directors, and the Funds' outside administrators including the Citco defendants, received "hefty" management fees for their experience in selecting and monitoring fund managers, and touted their due diligence "while issuing false reports to investors presenting nonexistent, or, at the very least, highly inflated, profits, and collecting fees based on such fictitious profits." (Ferber Am. Compl., ¶ 7; Pierce Am. Compl., ¶ 7.) The complaints further alleged that the general partner "completely abdicated its responsibilities to the Limited Partners and the Fund by failing to perform even minimal due diligence" into the Funds' sole custodian, BMIS, and, among other things, failed to "safely manage the Fund's assets"; perform due diligence; and investigate red flags regarding BMIS. (Ferber Am. Compl., ¶¶ 84, 85; Pierce Am. Compl., ¶¶ 83, 84.) In alleging demand futility, the complaints pleaded that the Funds' general partner faced liability for its "total abrogation of its duty of oversight," and "participated in, approved, or permitted the wrongs alleged herein, concealed or disguised those wrongs, or recklessly or negligently disregarded them." (Ferber Am. Compl, ¶¶ 153-167; Pierce Am. Compl., ¶¶ 153-167.)

It is further undisputed that plaintiff Trustee's Amended Complaints omit all such allegations as to wrongdoing by the Funds' management, and plead wrongdoing only by the Citco Administrators and PwC defendants.

In asserting the in pari delicto bar, defendants contend that the allegations in the derivative complaints constitute judicial admissions that are binding on the Trustee as the current

plaintiff in these actions. (Ds.' Memo. In Support at 16.) Plaintiff Trustee counters that it does not allege that the Funds' management committed fraud, and that it is not bound by the "non-operative" complaints filed by the prior derivative plaintiffs. (P.'s Memo. In Opp. at 14.)

It is well settled that admissions in a pleading may constitute documentary evidence for purposes of a motion to dismiss. (Morgenthow & Latham v Bank of New York Co., 305 AD2d 74, 80 [1st Dept 2003], lv denied 100 NY2d 512.) An admission may be not only a declaration of a party, but also a "declaration of a 'representative or predecessor in interest of a party.'" (Id. at 79, quoting Prince, Richardson on Evidence, § 8-201 [Farrell 11th ed].) Judicial admissions may be formal or informal. A formal judicial admission "is an act of a party done in the course of a judicial proceeding, which dispenses with the production of evidence by conceding, for the purposes of the litigation, the truth of a fact alleged by the adversary." (Prince, Richardson on Evidence, § 8-215.) Informal judicial admissions are "facts incidentally admitted during the trial or in some other judicial proceeding" and, although not conclusive, are "evidence" of the facts admitted. (Matter of Liquidation of Union Indem. Ins. Co. of New York, 89 NY2d 94, 103 [1996], quoting Prince, Richardson on Evidence, § 8-219.) An admission in an initial pleading is a "formal judicial admission" which, "even though subject to a subsequent, valid amendment, remains evidence of the facts admitted." (Bogoni v Friedlander, 197 AD2d 281, 291-292 [1st Dept 1994], lv denied 84 NY2d 803; Stauber v Brookhaven Natl. Laboratory, 256 AD2d 570, 570-571 [2d Dept 1998].) After the amendment, the statement in the initial pleading becomes an "informal judicial admission." (Bogoni, 197 AD2d at 292-293.)

Plaintiff fails to cite any authority that supports its contention that the derivative plaintiffs' complaints are not binding upon it. On the contrary, a derivative plaintiff's complaint

22

is by its very nature a complaint brought on behalf of the corporation. (See Abrams v Donati, 66 NY2d 951, 953 [1985], rearg denied 67 NY2d 758 [1986] [allegations of mismanagement by officers or directors of a corporation "plead a wrong to the corporation only, for which a shareholder may sue derivatively. . . ."]; Haig, 4B NY Prac, Commercial Litigation in New York State Courts [3d ed], § 82:4 ["Because the plaintiff-shareholders in a derivative action stand in the place of the corporation, the shareholders may not assert rights belonging to the corporation beyond those that the corporation might have asserted on its own behalf"].)

As Trustee of the Funds, plaintiff stands in their shoes. (See supra at 14.) Significantly, in the nearly two years between the filing of the derivative complaints in February 2009 and the Greenwich Sentry Funds' filing of bankruptcy petitions in November 2010, the Funds did not challenge the derivative plaintiffs' standing or otherwise seek dismissal of their complaints. Moreover, the Funds never disavowed the derivative plaintiffs' claims. Rather, in settlement of BMIS' claims against them, they assigned their claims against the Fairfield Greenwich Group management entities and directors to BMIS' trustee. This is therefore not a case in which the Funds repudiated their claims of wrongdoing by their management, or made a determination that such claims were without merit.

Under these circumstances, the court holds that the admissions in the derivative complaints as to wrongdoing by the Funds' management constitute informal judicial admissions to which the Funds, and therefore also the Trustee, are subject. (See Morgenthow, 305 AD2d at 78-79 [holding that admissions of plaintiff-shareholders' trustee in complaint in prior action were informal judicial admissions binding on plaintiffs in subsequent action, and granting motion to dismiss based on such admissions].) As plaintiff does not – and given the Funds' assignment of

23

the claims against their management, cannot – explain the admissions, dismissal of its Amended Complaints is required.

In seeking to avoid the in pari delicto defense, plaintiff contends that the defense is defeated by the deposition testimony of PwC Canada partner, Patricia Perruzza, that the Funds' management did not, to her knowledge, engage in any misconduct. (See P.'s Memo. In Opp. at 13; Perruzza Dep. at 41-44 [Young Aff. In Opp. Ex. A].) This conclusory, self-serving testimony is plainly insufficient to establish that the defense is without merit, or even to raise a triable issue of fact in this regard. Plaintiff further argues that the relative culpability of the parties is not appropriate for resolution on the motions to dismiss. (P.'s Memo. In Opp. at 15.) The in pari delicto doctrine applies where the wrongdoing of the plaintiff and the defendants are at least equal. (Rosenbach v The Diversified Group, Inc., 85 AD3d 569, 570 [1st Dept 2011].) The derivative complaints plead wrongdoing by the Funds' management that meets this threshold. As the admissions in the derivative complaints are wholly unexplained, triable issues of fact do not exist as to the relatively culpability of the Funds and the third party auditors and administrators.

Plaintiff also cites federal authority which holds that inconsistent statements in a prior pleading must be admitted as evidence at trial, but that consideration of such statements should not be considered on a motion to dismiss. The rationale for this authority is the policy in favor of liberal amendments of pleadings, and the harshness of a rule that would permit a litigant to amend its pleading "to repair a weakness cited by an adversary or by the Court, only to have the case dismissed because the conforming change in some way may conflict with an allegation in the earlier pleadings." (See Matter of PXRE Group, Ltd., Secs. Litig., 600 F Supp 2d 510, 525-

526 [SD NY 2009], affd 357 Fed Appx 393; Matter of Parmalat Secs. Litig., 421 F Supp 2d 703, 713 [SD NY 2006].) While this authority is not inconsistent with New York law, it is not applicable on the facts of this case. Plaintiff has not amended the complaints in order to correct a factual error but, rather, to eliminate the Funds' management defendants because the claims against them have been assigned to the BMIS trustee. Plaintiff cannot evade the in pari delicto doctrine by the expedient of deleting claims against a category of defendants. (See generally Stauber v Brookhaven Natl. Laboratory, 256 AD2d 570, supra [dismissing complaint where plaintiffs, "without any explanation," eliminated allegations about defendants' status as agents that would have resulted in dismissal of complaint due to failure to join defendants' principal, an entity that was a necessary party but was not amenable to jurisdiction].)[7]

In sum, the court holds that plaintiff fails to advance a meritorious objection to determination of the in pari delicto defense on the pleadings. This defense requires dismissal of all of the causes of action pleaded in the Amended Complaints, with the exception of plaintiff's contribution claim, which must also be dismissed for the reasons discussed below.[8]

Although this court's holding has the effect of immunizing defendants from suit by the

---

[7]In considering the admissions in the derivative plaintiffs' prior pleadings on these motions to dismiss the Trustee's Amended Complaints, the court notes that the amendment of the pleadings was authorized by prior court orders. (See Bankruptcy Court January 26, 2012 Stipulation and Agreed Order and this Court's April 10, 2012 order, discussed supra at 4.) Plaintiff does not, however, contend that the in pari delicto doctrine was raised in connection with such orders, or that either order made a finding that the defense was inapplicable to the Trustee's claims. This court's own review of the Bankruptcy Court docket and the file of the instant actions did not locate any order that addressed the in pari delicto doctrine. The doctrine was discussed tangentially in the derivative plaintiffs' motion for leave to bring adversary proceedings in the Funds' bankruptcy proceeding (see Bankruptcy Court Docket Nos. 293, 299), but was not ruled on by the Court, as the matter was settled.

[8]In view of this holding, the court does not reach defendants' specific objections to the pleading of the causes of action in the Amended Complaints.

Trustee, it bears noting that the holding comports with the Court of Appeals' balancing of the equities in Kirschner. There, in applying the in pari delicto doctrine to similar claims, the Court concluded that the innocent shareholders of the corporation whose insiders engaged in wrongdoing have no greater equitable interests than the innocent stakeholders of the third parties (e.g. auditors or administrators) that allegedly assisted the corporation's insiders with their wrongdoing. (15 NY3d at 475.) Following Kirschner, this court must similarly adhere to the bright line rule prohibiting suit by a corporation whose management, as established here on the pleadings, engaged in wrongdoing assisted by its outside advisors.

Contribution and Indemnification

Finally, as this Department recently held, Kirschner does not change New York's long-standing precedent that the in pari delicto doctrine does not bar contribution claims. (Rosenbach, 85 AD3d at 570-571.) Plaintiff seeks contribution from defendants for amounts paid by the Funds under a settlement with the BMIS trustee. (Trustee's Am. Compl., 20th cause of action.) Defendants move to dismiss this claim for contribution on the ground that it is barred by General Obligations Law § 15-108 (c), which provides: "A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person." Plaintiff counters that the settlement with BMIS was a settlement of claims under the avoidance provisions of the Bankruptcy Code, not of tort claims. (P.'s Memo. In Opp. at 33.)

The settlement with the BMIS trustee released the Funds from "all" actions and causes of action, "including, without limitation, the claims asserted against Greenwich Sentry in the Adversary Proceeding." (Amended Agreement, ¶ 12, Feinberg Aff., Ex. A to Ex. E.) The settlement agreement specified that the settled claims in the Adversary Proceeding included not

only claims under the Bankruptcy Code but also claims under the New York Fraudulent Conveyance Act for the withdrawals made by the Funds from BMIS. (Id., ¶ I.) As the release in the settlement agreement included tort claims as well as avoidance claims, General Obligations Law § 15-108 is a bar to plaintiff's contribution claim. To the extent that the settlement covered non-tort claims, they are not subject to contribution. (See Board of Educ. of the Hudson City Sch. Dist. v Sargent, Webster, Crenshaw & Folley, 71 NY2d 21 [1987].)

As to plaintiff's indemnification claims, plaintiff concedes that the PwC auditors' contracts do not contain indemnification provisions, but contends that it has stated an implied indemnification claim against these defendants. (P.'s Memo. In Opp. at 33-34.) This contention ignores that a party may not obtain implied indemnification unless the party has "committed no wrong" (Glaser v Fortunoff of Westbury Corp., 71 NY2d 643, 646 [1988] [internal quotation marks and citation omitted], or is not "responsible in any degree." (Rosado v Proctor & Schwartz, 66 NY2d 21, 24-25 [1985]; McDermott v City of New York, 50 NY2d 211, 216-217 [1980], rearg denied 50 NY2d 1059.) As the derivative complaints plead unexplained admissions as to the Funds' management's wrongdoing, an implied indemnification claim is not stated against the PwC Auditors.

Plaintiff's implied indemnification claim fails against the Citgo Administrators for the same reason. Plaintiff also asserts a contractual indemnification claim against the Administrators based on the Administration Agreements, each of which provides: "Subject to the limitations set out in Clause 6 [exempting the Administrator from liability to the Fund absent material breach of the Agreement], the Administrator shall indemnify the Fund and keep the Fund indemnified from and against any Claim which may be imposed on, incurred by or asserted against the Fund arising directly from the negligence, bad faith, fraud or dishonesty of its obligations on the part of the

27

Administrator in connection with the provision of the Services under this Agreement."
(Administration Agreements, § 7.2 [Feinberg Aff., Exs. A, B].) Section 7.3 in each Agreement
further conditions the Administrator's indemnification obligation on the Fund's provision of
notice to the Administrator of claims, and provides that the Fund shall not "make any
compromise in any case in which the Indemnifier [Administrator] may be required to indemnify
[the Fund] except with the Indemnifier's prior written consent." It is undisputed that the Citco
Administrators' consent was not obtained to the BMIS settlement. The contractual
indemnification claim against them therefore also fails.

It is accordingly hereby ORDERED that the motions to dismiss of defendants
PricewaterhouseCoopers Accountants N.V. (Netherlands) and PricewaterhouseCoopers LLP
(Canada) are granted to the extent that the Amended Complaints in the above-captioned actions
are dismissed in their entirety, with prejudice, as against said defendants; and it is further

ORDERED that the motion to dismiss of defendants Citco Fund Services (Europe) BV,
and Citco (Canada) Inc. is granted to the extent that the Amended Complaints in the above-
captioned actions are dismissed in their entirety, with prejudice, as against said defendants; and it
is further

ORDERED that the Clerk shall enter judgment accordingly; and it is further

ORDERED that the plaintiff's cross motion for discovery is denied.

This constitutes the decision and order of the court.

Dated:  New York, New York
        May 27, 2013

                            ENTER:

                            _Marcy Friedman_
                            J.S.C.

28

**CERTIFICATE OF SERVICE**

I, LING CHIOU, hereby certify, under penalty of perjury pursuant to 28 U.S.C. § 1746, that

on this 2nd day of June, 2014, I served DEFENDANT DLA PIPER LLP (US)'S STATEMENT OF

SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION TO DISMISS, by electronic transfer

to the ECF system, upon the following counsel of record:

> Joshua J. Bruckerhoff, Esq.
> Reid Collins & Tsai LLP
> 1301 S. Capital of Texas Hwy
> Building C, Suite 300
> Austin, TX 78746

_____
Ling Chiou